Filed 1/7/14  P. v. Tombow CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY BERNARD TOMBOW,<br><br>    Defendant and Appellant. | 2d Crim. No. B246693<br>(Super. Ct. No. 2012033340)<br>(Ventura County) |

Larry Bernard Tombow appeals a judgment following conviction of indecent exposure, with findings of four prior indecent exposure convictions and service of three prior prison terms.  (Pen. Code, §§ 314, subd. 1, 667.5, subd. (b).)[1]  We affirm.

### FACTUAL AND PROCEDURAL HISTORY

Silvana Galvan worked for an alcohol and drug rehabilitation center in Port Hueneme.  At midday on September 14, 2012, she went to the center's administration building to pick up a female patient.  Galvan drove a minivan and the driver and passenger windows were partially open.  As she drove into the parking lot, Galvan saw Tombow, who was wearing a hat, green vest, and jeans.  Galvan parked in front of the administration building.

As her patient walked to the passenger door of the minivan, Galvan noticed Tombow walking toward the passenger side of the vehicle.  When Tombow stood parallel

---

[1] All statutory references are to the Penal Code unless stated otherwise.

to the minivan, he touched the front of his pants with his hands.  Galvan thought that he was adjusting his belt or unzipping his pants.  As Tombow passed the passenger side door, he "pulled out . . . all or part of his penis [and] less than two seconds later he put it right back inside his pants."  Galvan asked her patient whether "that guy just flash[ed] us?"  The patient, who "was having a bad day," did not respond and kept her head down.  Angry and offended by Tombow's act, Galvan reported the incident to the administration receptionist.

Within minutes, Port Hueneme Police Officer Baltazar Tapia received an official dispatch describing a man who had exposed himself in the area of Scott and Third Streets in Port Hueneme.  Tapia then saw Tombow, who matched the description reported by Galvan, standing in the center median of Ventura Road near Scott Street.  Tapia stopped his patrol vehicle, waited for Tombow to cross the street, and then asked Tombow if he could speak to him.  Tapia asked Tombow to sit on the curb and informed him that he fit the description of a man who had recently exposed himself.  Tombow stated that "he hadn't been in a womb in 60 years."  Tapia asked what Tombow meant, and Tombow replied that he had "to satisfy [him]self."  Tombow also volunteered that he was a parolee.  Tapia then obtained Tombow's identification and ran an outstanding warrants check.  When he learned that Tombow had an outstanding arrest warrant, he arrested him.

At trial, Tombow testified and denied committing indecent exposure outside the rehabilitation center.  He also denied making statements to the arresting officer.

*Prior Indecent Exposure Convictions*

On June 8, 2001, and November 5, 2004, Tombow was convicted of indecent exposure involving incidents where he masturbated in front of Oxnard fast-food restaurants.  (Super. Ct. Ventura County, Nos. 2001007202, 2003042670.)  On April 2, 2010, Tombow  was convicted of indecent exposure involving an incident outside a Port Hueneme laundromat.  (Super. Ct. Ventura County, No. 2009029040.)  On May 24, 2012, he was convicted of misdemeanor disorderly conduct after he masturbated outside

2

a coffee house. (§ 647, subd. (a); Super. Ct. Ventura County, No. 2012014244.) The prosecutor also presented evidence of a 2003 conviction of misdemeanor disorderly conduct, and a 2000 conviction of indecent exposure.

*Conviction and Sentencing*

The trial court convicted Tombow of indecent exposure, and found that he suffered four prior indecent exposure convictions and served three prior prison terms. (§§ 314, subd. 1, 667.5, subd. (b).) The court sentenced him to a two-year midterm sentence, plus three years for the prior prison terms. The court imposed a $280 restitution fine, a $280 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and awarded Tombow 208 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Tombow appeals and contends that: 1) insufficient evidence supports his conviction; 2) the trial court erred by not excluding his pre-arrest statements pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445; and 3) the trial court erred by admitting evidence of his prior sexual offense convictions.

*DISCUSSION*

*I.*

Tombow argues that insufficient evidence supports his conviction of indecent exposure, in particular, and the element of specific intent, asserting that any exposure was accidental. He argues that his conviction denies him due process of law pursuant to the federal and California Constitutions.

Section 314 provides: "Every person who willfully and lewdly . . . [¶] 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . [¶] . . . is guilty of a misdemeanor. [¶] . . . [¶] Upon the second and each subsequent conviction under subdivision 1 of this section, . . . every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison."

3

A conviction of indecent exposure pursuant to section 314 requires evidence that "a defendant actually exposed his or her genitals in the presence of another person." (*People v. Carbajal* (2003) 114 Cal.App.4th 978, 986.)  Also, the intent of the actor must be lewd, i.e., the prosecutor must prove beyond a reasonable doubt that "the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*In re Smith* (1972) 7 Cal.3d 362, 366.)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241; *People v. Carbajal*, *supra*, 114 Cal.App.4th 978, 986 [indecent exposure conviction].)  Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.)  We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.)  "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

Sufficient evidence supports Tombow's conviction.  Galvan testified that she saw "all or part of [Tombow's] penis" for several seconds.  She believed that Tombow "flash[ed]" her and her patient.  Evidence also supports the court's implied finding of specific intent.  Tombow waited until he passed the open passenger door of the minivan to expose himself.  He saw Galvan drive into the parking area near the administration building and saw her patient walk toward the minivan.  Moreover, Tombow admitted to Officer Tapia that he exposed himself "to satisfy [him]self" because "he hadn't been in a womb in 60 years."  Although Galvan's patient had her head bowed

4

and did not see Tombow, the testimony of Galvan alone supports Tombow's conviction. (*People v. Elliott* (2012) 53 Cal.4th 535, 585 [unless it describes events that are physically impossible or inherently improbable, testimony of single witness sufficient to support conviction].)

*II.*

Tombow argues that the trial court erred by not excluding his pre-arrest statements. (*Miranda v. Arizona*, *supra*, 384 U.S. 436, 444-445.) He asserts that he made the statements during a custodial interrogation without benefit of the *Miranda* admonitions and a valid waiver. Tombow contends the error is not harmless beyond a reasonable doubt.

Prior to trial, Tombow sought to exclude evidence of his pre-arrest statements pursuant to *Miranda*. He asserted that his investigative detention was custodial in nature, in part because his questioning was accusatory and he revealed that he was a parolee. Following an evidentiary hearing, the trial court denied Tombow's motion, ruling that the evidence did not suggest that "the initial questioning . . . was at all coercive or in custody or restraining."

*Miranda* advisements are required only when a person is subject to "custodial interrogation." (*Miranda v. Arizona*, *supra*, 384 U.S. 436, 444.) "[C]ustodial interrogation" refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Ibid.*) Custodial interrogation does not occur where an officer detains a suspect for investigation and the questioning is limited to identifying the suspect or confirming or dispelling the officer's suspicions. (*People v. Farnam* (2002) 28 Cal.4th 107, 180; *People v. Davidson* (Nov. 26, 2013, No. B244607) – Cal.App.4th -, - [2013 Cal.App. LEXIS 954].)

In review of *Miranda* issues, we accept the trial court's resolution of disputed facts and inferences that are supported by sufficient evidence. (*People v. Martinez* (2010) 47 Cal.4th 911, 949; *People v. Davidson*, *supra*, - Cal.App.4th -. - [2013 Cal.App. LEXIS 954].) We do not redetermine the credibility of witnesses. (*Martinez*, at

5

p. 949.)  We independently determine, however, "'whether the challenged statement was legally obtained.'"  (*Ibid.*; *People v. Brendlin* (2008) 45 Cal.4th 262, 268 ["'[W]hether the applicable law applies to the facts [in a suppression motion] is a mixed question of law and fact that is subject to independent review'"].)

Whether a person is in custody is objectively determined; the pertinent inquiry is whether there is a formal arrest or restraint on freedom of movement similar to a formal arrest.  (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400.)  We consider the totality of circumstances, including whether the person has been formally arrested; the length of detention; the location; the number of officers involved; the nature of questioning; whether the officer informed the person he was considered a suspect; whether the officer was aggressive or confrontational; and whether the officer used interrogation techniques.  (*People v. Davidson*, *supra*, - Cal.App.4th -, - [2013 Cal.App. LEXIS 954].)

The trial court did not err by denying Tombow's suppression motion because the totality of circumstances establishes that he was not subjected to a custodial interrogation.  The brief encounter occurred during daylight on a public street.  Tapia did not activate his vehicle lights or siren nor did he draw his service weapon.  Tapia's officer-partner remained in the police vehicle.  Tapia requested Tombow to sit on the curb during their short conversation.  Tapia did not handcuff or employ force against Tombow.  Although Tapia informed Tombow that he considered him a suspect, this single factor is not conclusive.  (*People v. Vasquez* (1993) 14 Cal.App.4th 1158, 1164.)  In sum, Tapia's casual questioning on a public sidewalk is not a custodial interrogation for *Miranda* purposes.  (*People v. Davidson*, *supra*, - Cal.App.4th -, -. [2013 Cal.App. LEXIS 954].)

### III.

Tombow argues that the trial court abused its discretion by admitting evidence of his five prior convictions for indecent exposure or disorderly conduct, ranging from the years 2001 through 2012.  (§§ 314, subd. 1, 647, subd. (a).)  He contends that the evidence was unduly prejudicial and its probative value insubstantial.

6

Tombow also points out that many of the prior convictions were obtained by guilty plea, and asserts that "the certainty of allegations was not proven beyond a reasonable doubt."

Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

In exercising its discretion to admit evidence of a prior sexual offense pursuant to Evidence Code sections 1108 and 352, the trial court must consider such factors as the nature, relevance, and possible remoteness of the prior offense; the degree of certainty of its commission; the likelihood of confusing, misleading, or distracting jurors from their main inquiry; similarity to the charged offenses; any likely prejudicial effect upon the jurors; the burden on defendant to defend against the prior offense; and the availability of less prejudicial alternatives to its outright admission, such as defendant admitting that he committed the prior offense or the exclusion of irrelevant, inflammatory details regarding the prior offense. (*People v. Loy* (2011) 52 Cal.4th 46, 61.) Our Legislature has determined that prior sexual offense evidence is particularly probative, and there is a presumption in favor of its admission. (*Id.* at pp. 61-62.) We review the court's ruling pursuant to Evidence Code sections 1108 and 352 for an abuse of discretion. (*Loy*, at p. 61.)

To be admissible to establish the defendant's intent, the prior conduct and the charged offense need only be sufficiently similar to support the inference that defendant probably harbored the same intent in each instance. (*People v. Jones* (2012) 54 Cal.4th 1, 50.) Persons who commit indecent exposure usually act "from a persistent and recurring desire to exhibit their sex organs." (*People v. Earle* (2009) 172 Cal.App.4th 372, 399.) "Because the desire is typically persistent and recurring, it is a good bet that someone who commits this act once will be predisposed to commit it again (and again). This provides a solid foundation for a focused inference that a defendant, having criminally exposed himself on one occasion, will do so again. This in turn adds weight to an accusation that he *has* done so again." (*Ibid*.)

7

The trial court did not abuse its discretion by admitting evidence of the prior sexual offense convictions. (Evid. Code, §§ 1108, subd. (a), 352.) Tombow's prior sexual offenses were similar to the present offense, i.e., he exposed himself to young women who sat behind windows in enclosed spaces. Evidence regarding the prior offenses was no stronger and no more inflammatory than evidence regarding the present offense. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) Moreover, the court excluded evidence of three convictions occurring prior to 2001 as remote. The evidence admitted regarding the prior sexual offenses consisted of witness testimony and documentary evidence and did not "necessitate undue consumption of time" as reflected by the appellate record. (Evid. Code, § 352.)

Further, the trial court properly considered the prior convictions as proof that Tombow committed indecent exposure and disorderly conduct previously. A guilty plea admits every element of the charged crime, is the legal equivalent of a verdict, and is tantamount to a finding. (*People v. Wallace* (2004) 33 Cal.4th 738, 749.)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.

8

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James W. Bilderback, Margaret E. Maxwell, Supervising Deputy Attorneys General, for Plaintiff and Respondent.