Filed 4/23/15  P. v.Cantu CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY MARK CANTU,<br><br>      Defendant and Appellant. | C072861<br><br>(Super. Ct. No. 09F04103) |

A jury convicted defendant Anthony Mark Cantu on three counts of indecent exposure and two counts of annoying and molesting a child under the age of 18.  The trial court denied defendant's request to strike a prior serious felony conviction allegation and sentenced him to an aggregate prison term of eight years eight months.  The trial court did not impose a sentence on the counts for annoying and molesting a child under the age of 18, but it said the sentence on those counts was stayed pursuant to Penal Code section 654.[1]

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant now contends (1) two of his three convictions for indecent exposure must be reversed because there was only one act of indecent exposure, or in the alternative, defendant may be punished only once for the three convictions for indecent exposure; (2) if we reverse the convictions on two of the indecent exposure counts, the trial court may not punish defendant more than once on the counts for annoying and molesting a child under the age of 18; (3) the conviction on the count three charge of indecent exposure must be reversed for insufficiency of the evidence if we decline to reverse the convictions on two of the indecent exposure counts; (4) the trial court abused its discretion in declining to dismiss a prior strike allegation; and (5) the trial court abused its discretion in admitting evidence of his prior uncharged conduct.

We conclude (1) the convictions on two of the indecent exposure counts must be reversed because there is evidence of only one act of exposure by defendant, and thus we need not consider defendant's alternate argument; (2) the matter must be remanded for resentencing to impose sentence on counts four and five and to determine whether a stay is appropriate; (3) we do not consider the claim that insufficient evidence supports the count three conviction because we conclude two of the indecent exposure counts must be reversed; (4) the trial court did not abuse its discretion in declining to dismiss a prior strike allegation; and (5) the trial court did not abuse its discretion in admitting evidence of a prior state park incident, and any error in admitting other uncharged conduct evidence was harmless.

BACKGROUND

Sisters Melissa, Christa, and Angela (ages 14, 9, and 7, respectively) were in their backyard the afternoon of May 12, 2009. The sun was still up. The girls' mother, Christina K., was inside the house. Christa and Angela were laughing and making noise while they played.

Christa and Angela felt water on their heads. They saw water going over the fence into their backyard. Angela was sprayed with water two times. She looked through gaps in the fence and saw a man spraying water at her.

The fence separating the girls' backyard and their neighbor's property was old and in poor condition. Some portions of the fence were rotted. There were gaps between the fence boards.

The man Angela saw spraying water at her did not have any clothes on. He faced the girls. Angela could see the man's whole body. She saw the man's private parts.

Christa also looked through the fence. She saw a man holding a water hose. The man stood near a lawnmower.

Christa and Angela ran into their house. Melissa remained outside. Christa and Angela acted like "they saw a ghost." They were "in a panic mode, like they didn't know what to do." Christa told Christina K. the neighbor was squirting water at the girls. Christa said, "He's naked." Angela also told Christina K. what she saw.

Christina K. went outside. She saw the fence was wet. Melissa sat on the grass looking toward the fence. Christina K. squatted down and moved toward the fence in a crouched position. She looked through the gaps in the fence and saw defendant standing next to a lawnmower. Defendant did not have any clothes on. He had one hand on the lawnmower and the other hand on his penis. Christina K. saw the head of defendant's penis. Defendant was masturbating. He faced Christina K. and looked at her.

Christina K. stood up and said "What the fuck?" in a loud voice. Defendant appeared startled. He stopped what he was doing, turned around, and ran inside his house. Christina K. called the police.

Christa told a police officer on the day of the incident the man she saw through the fence was completely nude. Christa reported she saw the man's private parts. She said the man continued getting the girls wet as Christa looked at him. Christa identified defendant as the man she saw naked. Christa subsequently told a police detective she

3

saw defendant naked, and she saw defendant's private parts. Christa said defendant walked toward her and sprayed her with a hose a second time, and she was scared and ran inside her house. But at trial, Christa testified the man she saw wore underwear. Christa denied she saw the man's private parts.

A police detective interviewed defendant on May 21, 2009. Defendant told the detective he had psoriasis on his lower legs and elbows. Defendant did not claim to have psoriasis on any other part of his body.

Christina K. and Angela identified defendant at trial as the man they saw naked.

The prosecutor also presented evidence at trial, through the testimony of Sharon Gold and Kelly Bingham, of defendant's prior uncharged conduct. Gold and defendant were married in August 1984. In the 1980s they lived in an apartment owned by the hospital where Gold worked. The balcony of their apartment faced a parking lot and several buildings, including a bookstore. In 1988, the head of security for the hospital informed Gold she and defendant had to move out of their apartment because bookstore customers complained to police on two occasions that defendant was naked on his balcony. Defendant explained to Gold that he was standing in the kitchen with his robe on, and someone from across the parking lot must have seen him when his robe fell open. He denied that he was naked on the balcony. Gold did not review any police report regarding the alleged complaints against defendant.

Gold also testified about an incident that occurred between August 1984 and late 1988. Gold said she and defendant took a tram in order to hike at a state park at the top of the Idyllwild mountain in Palm Springs. The state park was not crowded, but other hikers were around. Defendant asked Gold to photograph him naked on a boulder off the hiking trail. Defendant was very excited about posing for the photographs. He took off all his clothes and he had an erection. Gold took the requested photographs. She did not know whether anyone complained that defendant was naked.

4

Bingham lived in military housing in Novato with her husband and two young daughters in 1991. While defendant was in the Navy he and Gold lived next to Bingham and her family. One evening in April 1991, Bingham was turning off the lights in her house when she saw a flash of color go by her sliding glass door. Bingham turned off the light and looked out her window. She saw her neighbor leaving her yard. The neighbor was naked.

Bingham called the police. Police contacted defendant but no charges were filed against him. Bingham could not identify defendant as her neighbor at the time of trial because the incident occurred a long time ago.

Defense counsel argued defendant was naked in his backyard because he had psoriasis, and he was sunning himself. Defense counsel suggested defendant could have been scratching himself when Christina K. saw him.

Defendant was first treated for psoriasis in the Veterans Administration system in 2003. He had psoriasis on his elbows, lower legs, and knees. Defendant's medical records do not indicate he had psoriasis on his genitals. According to Dr. Roslyn Isseroff, more severe psoriasis can be treated with exposure to ultraviolet B rays, a part of the natural sunshine spectrum. Defendant received phototherapy as treatment for his psoriasis in 2010. His genital area was always covered during phototherapy sessions.

The jury convicted defendant of indecent exposure (§ 314 -- counts one through three) as to Christa, Angela and Christina K., and annoying and molesting a child as to Christa and Angela (§ 647.6 -- counts four and five). The trial court bifurcated the trial on the allegations that defendant had been convicted in 1998 on two counts of violating section 288, subdivision (a) (lewd or lascivious acts upon or with a child under the age of 14 years), a serious felony under section 1192.7, subdivision (c). Defendant stipulated that those allegations were true.

The People subsequently dismissed the allegation concerning one of defendant's prior section 288, subdivision (a) convictions, and asked the trial court to sentence

defendant as a "two striker." Defendant asked the trial court to exercise its discretion to dismiss the allegation concerning his remaining section 288, subdivision (a) conviction. The trial court denied defendant's request.

The trial court sentenced defendant under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12), which provides enhanced punishment if a defendant is convicted of a felony and he has one or more prior serious and/or violent felony convictions. The trial court imposed the upper term of three years on count one, doubled pursuant to the Three Strikes law to a term of six years. Over defendant's objection, the trial court imposed a consecutive one-third the midterm on count two, doubled to a term of one year four months, and a consecutive one-third the midterm on count three, doubled to a term of one year four months. The trial court did not impose a sentence on counts four and five. It said the sentences on those counts were stayed pursuant to section 654. Defendant received an aggregate sentence of eight years eight months in prison.

DISCUSSION

I

Defendant contends that even though there were three victims, there was only one act of indecent exposure. Therefore, he says, two of the three counts of indecent exposure must be reversed. The Attorney General agrees.

"[A] charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute -- the gravamen of the offense -- has been committed more than once." (*Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349.) The gravamen of the offense of indecent exposure is the exposure of one's person or private parts. (*People v. Smith* (2012) 209 Cal.App.4th 910, 917 (*Smith*).) Visual observation of the defendant's genitals and the number of observers are not elements of the crime. (*Id.* at p. 915; *People v. Carbajal* (2003) 114 Cal.App.4th 978, 986 (*Carbajal*).) The defendant may be convicted of only one count of indecent exposure where the defendant exposed himself to a number of people during a continuing course of conduct, even if there is a

6

break between observations of the defendant. (*Smith, supra*, 209 Cal.App.4th at pp. 915-917 [no evidence the defendant pulled up his pants or stopped masturbating between the time the first and second victims saw him].)

Here, defendant was convicted of three counts of indecent exposure based on the May 12, 2009 incident. Each count relates to one of the three individuals who saw defendant naked on that date. There is no evidence of a break in defendant's act of exposing himself during the incident. Because there is evidence of only one act of exposure by defendant, the convictions for two of the section 314 counts must be reversed and the sentences associated with those counts must be stricken. (*Smith, supra*, 209 Cal.App.4th at p. 917.)

We do not consider defendant's alternate argument that he may be punished only once for the three section 314 convictions because we conclude only one section 314 conviction was proper.

II

The parties agree that, if we reverse two of the indecent exposure convictions, the matter must be remanded for resentencing on the convictions for annoying and molesting a child (counts four and five), and the trial court may determine whether section 654 prohibits multiple punishment for counts four and five. Defendant argues the trial court is required to stay the sentence on count four or five. We will remand for resentencing so that the trial court can impose sentence on counts four and five and determine whether a stay is appropriate.

Section 654 provides that an "act or omission" punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. (§ 654, subd. (a).) The phrase "act or omission" refers not only to a single act or omission but also to a course of conduct which constitutes an indivisible transaction. (*People v. Beamon* (1973) 8 Cal.3d 625,

7

636-637 (*Beamon*).) Whether a course of conduct is divisible and, therefore, gives rise to more than one "act or omission" within the meaning of section 654 depends on the intent and objective of the defendant. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*); *Beamon, supra,* 8 Cal.3d at p. 637.) If all the offenses were incident to one criminal objective or were the means of accomplishing or facilitating one such objective, the defendant may be punished for any one of those offenses but not for more than one. (*Harrison, supra*, 48 Cal.3d at p. 335; *Beamon, supra,* 8 Cal.3d at p. 637.) If, on the other hand, the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Beamon, supra,* 8 Cal.3d at p. 639.)

When a trial court determines that section 654 applies to a particular count, "the trial court must impose sentence on that count and then stay execution of that sentence. There is no authority for a court to refrain from imposing sentence on all counts, except where probation is granted." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466; see also *People v. Duff* (2010) 50 Cal.4th 787, 796; *People v. Deloza* (1988) 18 Cal.4th 585, 594; *People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1327.) Failing to impose sentence on all counts results in an unauthorized absence of sentence and can lead to procedural difficulties if the count on which sentence was imposed is later reversed or vacated. (*Alford, supra,* 180 Cal.App.4th at pp. 1466, 1472.)

And in determining whether section 654 requires a stay, the trial court must employ the test articulated in *Harrison, supra,* 48 Cal.3d 321, and *Beamon, supra,* 8 Cal.3d 625. After imposing consecutive sentences on counts one, two, and three, the trial court here said, "As for Counts Four and Five, they are stayed pursuant to . . . section 654." The trial court did not elaborate on its section 654 ruling. The probation report recommended staying the sentences on counts four and five, stating count four was "an

8

alternative statement to" count one and count five was "an alternative statement to" count two. But indecent exposure and annoying or molesting a child under the age of 18 years are separate offenses (§§ 314, 647.6; *People v. Phillips* (2010) 188 Cal.App.4th 1383, 1397 (*Phillips*) [a violation of section 647.6 is more serious than the crime of indecent exposure]), and the information charged counts four and five as a "separate cause of action, being a different offense from but connected in its commission as the charges set forth in Count One through Three."

In *People v. Correa* (2012) 54 Cal.4th 331, 334 (*Correa*), the California Supreme Court held that section 654 does not apply where a defendant is convicted of multiple violations of the same criminal statute. That holding is a departure from cases like *People v. Davey* (2005) 133 Cal.App.4th 384, 387, where the appellate court concluded the sentences on the indecent exposure counts must be stayed under section 654 when the counts are based on one criminal act. (*Correa, supra*, 54 Cal.4th at pp. 343-344.) The Supreme Court in *Correa* said its interpretation of section 654 is "a new rule" and must be applied prospectively only. (*Correa, supra*, 54 Cal.4th at pp. 344-345.) The holding in *Correa* is not applicable to this case because the charged offenses occurred before *Correa* was decided. Accordingly, on remand, the trial court should consider the application of section 654 without regard to the fact that counts four and five involve the same substantive offense.

### III

Defendant also argues in the alternative that if we decline to reverse two of the indecent exposure convictions, there was insufficient evidence to support his count three conviction for indecent exposure involving Christina K. Because we have concluded that two of the indecent exposure convictions must be reversed, we need not address this alternative contention. In any event, based on our review of the entire record in the light most favorable to the judgment, there was substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of exposing

9

himself to Christina K. in violation of section 314, subdivision (1).  (*People v. Cuevas* (1995) 12 Cal.4th 252, 257, 260, 272 [describing substantial evidence test]; *People v. Zamudio* (2008) 43 Cal.4th 327, 357 [we will reverse a judgment for insufficient evidence only if it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the verdict].)  Christina K. testified defendant faced her, and she saw his eyes looking at her as he masturbated.  It was only when Christina K. yelled out that defendant stopped and ran into his house.  Christina K.'s testimony supports the jury's conclusion that defendant willfully and lewdly exposed his penis to her.

IV

Defendant next argues the trial court abused its discretion in declining to dismiss a prior strike allegation.

A trial court may dismiss a prior strike allegation "in furtherance of justice" pursuant to section 1385.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)  Dismissal under section 1385 requires consideration of the defendant's constitutional rights and the interests of society represented by the People.  (*People v. Williams* (1998) 17 Cal.4th 148, 159-160 (*Williams*).)  We review the trial court's section 1385 ruling for abuse of discretion.  (*Carmony, supra*, 33 Cal.4th at pp. 373-376.)  The party attacking the sentence bears the burden of clearly showing the trial court's ruling is unreasonable in light of the applicable law and the relevant facts.  (*Carmony, supra*, 33 Cal.4th at p. 376; *Williams, supra*, 17 Cal.4th at p. 162.)

In deciding whether to dismiss a prior strike allegation under the three strikes law, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Carmony, supra*, 33 Cal.4th at p. 377.)

10

Here, the trial court considered the record of defendant's military service, the many letters of support for defendant, and defendant's statement. The trial court recognized defendant's admirable military record, care of his elderly parents, volunteer work, and the support of his family. But the trial court found defendant appeared unable to control his aberrant conduct. The trial court concluded defendant's prior and current offenses were serious in nature.

The record supports the trial court's conclusions. Although defendant had the support of family and friends and had good employment prospects, and although his prior serious felony convictions occurred 11 years before the charged offenses, defendant's criminal record indicated that he lacked rehabilitation and that he was a danger to society. (*People v. Strong* (2001) 87 Cal.App.4th 328, 342 [the remoteness of the prior strike alone cannot take a defendant outside the spirit of the Three Strikes law].) Defendant's prior serious felony convictions involved continued sexual abuse of his seven- and five-year-old daughters. The abuse included digital penetration, oral copulation, and having the victims masturbate him. During a 2012 interview, defendant blamed his conduct with his daughters on alcohol, job and marital stress, his wife being frigid, and post traumatic stress disorder. When asked what he was accused of doing to his daughters, he responded "Nothing really," minimizing the very serious nature of his prior crimes. Defendant spent time in custody and on probation. He saw a psychologist for about 10 months. But he sexually re-offended in 2009. The current offenses are not as serious as defendant's prior sexual offenses, but they are not trivial. The trial court noted that one of the child victims still appeared "quite stricken" by the incident. In the current offenses, defendant directed the attention of a nine- and a seven-year-old girl to his bare genitals. After attracting the girls' attention, defendant masturbated. Defendant admitted being naked in his backyard but denied any wrongdoing. Instead, he blamed his neighbors for trying to get rid of him.

11

The trial court appointed Dr. Janice Nakagawa to assess defendant's future dangerousness pursuant to defense counsel's request. Dr. Nakagawa opined defendant can be predisposed to commit a sexual offense. She said defendant's conduct evinced inappropriate sexual behaviors toward female children, and it was uncertain that he can be rehabilitated. She nevertheless concluded defendant did not pose a danger to the health and safety of others "due to his very conventional, rule-following ways of conducting himself and structuring his life." Dr. Nakagawa recommended the trial court not impose a prison sentence. Defendant faults the trial court for rejecting Dr. Nakagawa's opinion, but the trial court was not bound to follow the doctor's recommendation in exercising its sentencing discretion. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 [a juvenile court is entitled to determine the weight it gives to a psychological evaluation in making a placement order]; *People v. Monroe* (1985) 168 Cal.App.3d 1205, 1214 [the trial court was not compelled to accept the psychologist's opinion in deciding whether to require sexual offender registration].)

Defendant claims the trial court was biased against him, but nothing in the record supports that assertion. The trial court did not abuse its discretion in declining to dismiss the prior strike allegation.

V

Defendant further claims the trial court abused its discretion in admitting evidence that he (A) exposed his erect penis at a state park in the 1980s; (B) stood naked on his apartment balcony, where others allegedly saw him, on two occasions in the 1980s; and (C) appeared naked in his neighbor's backyard in 1991.

In general, evidence of a defendant's conduct other than what is currently charged is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369 (*Kipp*).) Uncharged conduct evidence is admissible, however, when relevant to prove a fact other than the defendant's criminal disposition, such as motive, opportunity, intent,

12

preparation, plan, knowledge, identity, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).)

Evidence Code section 1108 is an exception to the rule stated in Evidence Code section 1101. (Evid. Code, § 1101, subd. (a).) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses and that the defendant committed the charged sexual offense. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164 (*Villatoro*); *People v. Falsetta* (1999) 21 Cal.4th 903, 912, 915, 922 (*Falsetta*) [other crimes evidence may be considered for any relevant purpose].) Under Evidence Code section 1108, subdivision (a), evidence of the defendant's commission of another sexual offense or offenses is admissible in a case where the defendant is charged with a sexual offense, unless the evidence must be excluded under Evidence Code section 352. Evidence Code section 352 authorizes a trial court to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

In enacting Evidence Code section 1108, the Legislature recognized " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*Villatoro, supra,* 54 Cal.4th at pp. 1160, 1164; *Falsetta, supra,* 21 Cal.4th at p. 911.) Evidence Code section 1108 permits the trier of fact to consider evidence that the defendant has a propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility. (*Villatoro, supra,* 54 Cal.4th at p. 1164; *Falsetta, supra,* 21 Cal.4th at p. 911.)

We review a trial court's Evidence Code section 352, 1101 and 1108 determinations under the deferential abuse of discretion standard. (*People v. Avila* (2014)

13

59 Cal.4th 496, 515; *Kipp, supra*, 18 Cal.4th at pp. 369, 371.) A trial court abuses its discretion when it departs from applicable legal standards. (*People v. Harris* (1998) 60 Cal.App.4th 727, 736 (*Harris*).) We review the correctness of the trial court's ruling at the time it was made, not by reference to evidence produced at a later date. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).) We will reverse the trial court's ruling if it is arbitrary as a matter of law. (*Kipp, supra*, 18 Cal.4th at p. 371; *Robertson, supra,* 208 Cal.App.4th at p. 991.) We review the trial court's ruling de novo to the extent it depends on the proper interpretation of the Evidence Code. (*People v. Walker* (2006) 139 Cal.App.4th 782, 795.)

We now turn to the uncharged conduct evidence defendant asserts is inadmissible.

## A

The prosecutor gave an offer of proof regarding the circumstances surrounding the photography at the state park and sought to admit the evidence, pursuant to Evidence Code sections 1101, subdivision (b) and 1108, to prove propensity, intent, common plan, and absence of mistake. The trial court granted the prosecutor's motion.

Defendant says evidence of the state park incident is inadmissible under Evidence Code section 1108 because the incident does not involve a sexual offense. We conclude the trial court fairly found, based on the prosecutor's offer of proof, that defendant committed indecent exposure during the state park incident.

The term "sexual offense" in Evidence Code section 1108 includes a violation of section 314, which proscribes willfully and lewdly exposing one's person or private parts in a public place or a place where there are present other persons to be offended or annoyed thereby. (Evid. Code, § 1108, subd. (d)(1)(A).) "Willfully" means committing an act intentionally, purposefully, or willingly. (*In re Smith* (1972) 7 Cal.3d 362, 364.) "Lewdly" means acting with a sexual purpose. (*Id.* at p. 366.) A conviction for indecent exposure requires proof the defendant meant to expose himself, and intended by his

14

conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront.  (*Ibid.*)

With regard to the element of exposure, the defendant must actually expose his genitals, but there is no requirement that someone see the defendant's genitals.  (*Carbajal, supra,* (2003) 114 Cal.App.4th at p. 986; *People v. Massicot* (2002) 97 Cal.App.4th 920, 922, 924.)  Defendant's contention to the contrary is not supported by citation to legal authority and is, therefore, forfeited.  (*People v. Watkins* (2009) 170 Cal.App.4th 1403, 1410.)

The prosecutor's offer of proof satisfied the elements of section 314.  The prosecutor said Gold would testify that defendant took off all his clothes; he was naked in a park where other hikers were around; he was very excited about being naked; and he had an erection.  A trier of fact could reasonably find from this evidence that defendant purposefully exposed his genitals, in a place where other persons who could be offended or annoyed thereby were present, and defendant intended to direct public attention to his genitals for purposes of sexual arousal or gratification.

Defendant also claims evidence of the state park incident was improperly admitted because it bears no similarity to the charged offenses.  We disagree.

Though not identical in circumstances, the state park incident and the current sexual offenses involve defendant becoming sexually excited when he was naked in a place where others could observe him.  The fact that the uncharged and charged sexual offenses are not identical is not dispositive for purposes of admission under Evidence Code section 1108.  (*People v. Loy* (2011) 52 Cal.4th 46, 63 (*Loy*).)  " '[T]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose.  It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' "  (*Loy, supra,* 52 Cal.4th at p. 63.)

15

Defendant further argues evidence of the state park incident was improperly admitted under Evidence Code section 352.

A trial court must evaluate whether the probative value of the uncharged conduct evidence outweighs any prejudice from its admission pursuant to Evidence Code section 352, even if evidence of the uncharged acts is admissible under Evidence Code section 1108. (*Villatoro, supra,* 54 Cal.4th at p. 1163.) A trial court must "consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra*, 21 Cal.4th at p. 917.) The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense. (*Ibid.*) The prejudicial impact of uncharged conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act. (*People v. Balcom* (1994) 7 Cal.4th 414, 427.) The determination under Evidence Code section 352 is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. (*Falsetta, supra,* 21 Cal.4th at pp. 917-918.)

The admission of uncharged sexual offense evidence under Evidence Code section 1108 is not treated as per se unduly prejudicial. (*Villatoro, supra*, 54 Cal.4th at p. 1164; *Falsetta, supra,* 21 Cal.4th at pp. 911, 916-917.) Moreover, " ' "[t]he prejudice

16

which [Evidence Code section 352] is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." ' [Citations.]" (*Harris, supra,* 60 Cal.App.4th at p. 737.) Rather, the statute is concerned with " ' "evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues." ' " (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1105.)

We conclude there is sufficient similarity between the uncharged and charged acts to be probative of defendant's propensity and intent to commit the charged sexual offenses. Defendant's intent was in dispute. The state park incident, like the charged offenses, evinces defendant's interest in being naked in a place where others could see him and his intent to direct attention to his genitals for the purpose of his sexual arousal or gratification. (See generally *People v. Branch* (2001) 91 Cal.App.4th 274, 282 (*Branch*).)

The evidence of defendant's conduct during the state park incident is not stronger or more inflammatory than that for the charged offenses. (*Harris, supra,* 60 Cal.App.4th at pp. 737-738 [whether testimony describing uncharged act is stronger or more inflammatory than testimony concerning charged offenses is relevant to Evidence Code section 352 balancing].) The state park incident is also not likely to cause jury confusion. Further, Gold was subject to cross-examination at the trial. Defendant had an opportunity to test Gold's memory of what she personally observed and to challenge her credibility. Gold's testimony concerning the incident is straightforward. That testimony is not protracted, taking up only five pages of the reporter's transcript.

The state park incident occurred at most 24 years before the charged offenses. However, there is no bright line rule regarding whether a prior act is too remote to be admissible. (*Ewoldt, supra*, 7 Cal.4th at p. 405 [uncharged act occurred 12 years prior to trial]; *Branch, supra,* 91 Cal.App.4th at pp. 278, 281, 284 [uncharged sexual acts committed over 30 years before the charged offenses occurred were properly admitted

17

under Evidence Code sections 1101 and 1108]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1392-1393, 1395 [uncharged sexual acts that occurred 18 to 25 years before the charged offenses were not too remote for purposes of Evidence Code section 352].)  And the "staleness" of an offense is generally relevant only when the defendant has led a legally blameless life in the interim.  (*Harris*, *supra*, 60 Cal.App.4th at p. 739.) Defendant has not remained "blameless" since the state park incident.  In 1998, he pleaded guilty to two counts of lewd or lascivious conduct against his five- and seven-year-old daughters in relation to a course of conduct that occurred in the 1990s. Defendant was ordered to serve a one year sentence in county jail and granted eight years formal probation.  The current offenses occurred in 2009, about two years after the end of his probation term.  Under the circumstances, the state park incident was not too remote to be admissible under Evidence Code section 352.

Although the state park incident did not result in a conviction, defendant does not argue, and we see nothing in the record to suggest, that the jury would be tempted to convict defendant on the charged offenses in an effort to punish him for his prior conduct during the state park incident.  The questions the jury asked after it commenced deliberations suggest it focused on the charged offenses, not defendant's uncharged acts.

Under these circumstances, the trial court did not abuse its discretion in admitting evidence of the state park incident under Evidence Code sections 1108 and 352. Having concluded the trial court properly admitted that evidence under Evidence Code section 1108, we need not discuss the admissibility of the same evidence under Evidence Code section 1101.

B

Defendant next claims evidence that he exposed his naked body to bookstore customers as he stood on his apartment balcony was improperly admitted because the evidence was based on inadmissible hearsay.

18

It is true that Gold's proposed testimony about defendant's prior conduct was based on the head of security's out-of-court statement to Gold. The head of security's out-of-court statement to Gold was, in turn, based on the out-of-court statements by unknown complainants or police officers. Although the Attorney General says Gold's testimony was offered to show the effect the accusations had on Gold and her subsequent conduct in confronting defendant, Gold's testimony was clearly offered to prove the truth of the matter asserted, i.e., that defendant stood naked on his balcony and exposed himself to bookstore customers. The head of security's out-of-court statement to Gold and the out-of-court statements by unknown complainants or police officers to the head of security are hearsay.

But even if the trial court erred in admitting the balcony evidence, the error was harmless under any standard of prejudice because the evidence at trial overwhelmingly established defendant's guilt regarding the charged offenses. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]; *People v. Watson* (1956) 46 Cal.2d 818, 836.) As we have explained, a violation of section 314 requires proof the defendant willfully exposed his genitals in a public place or in a place where there are present other persons to be offended or annoyed thereby, and the defendant intended to direct attention to his genitals for purposes of sexual arousal, gratification, or affront. (*In re Smith, supra,* 7 Cal.3d at pp. 364, 366.) A violation of section 647.6, subdivision (a) requires proof of (1) the existence of objectively and unhesitatingly irritating or annoying conduct by the defendant; (2) which is motivated by an abnormal sexual interest in children in general or a specific child; (3) the conduct is directed at a child or children; and (4) the victim(s) are a child or children. ( *Phillips, supra,* 188 Cal.App.4th at p. 1396.) Section 647.6, subdivision (a) does not require a touching. (*People v. Lopez* (1998) 19 Cal.4th 282, 289.) The test for determining whether the defendant's conduct would unhesitatingly irritate or disturb is an objective one, not dependent on whether the child was in fact irritated or disturbed. (*Id.* at p. 290.)

19

Angela's testimony established defendant gained the attention of Christa and Angela by squirting water at them, causing the girls to look through the clearly visible gaps in the fence and to see defendant's genitals as defendant stood facing the girls. Defendant looked at Christa as she peered through the fence. Although Christa denied at trial that she saw defendant's genitals, she told her mother on the date of the incident the man she saw was naked. And Christa reported to a police officer on the day of the incident that defendant was completely nude. Christina K. saw defendant masturbating. Defendant faced Christina K. and looked at her as he masturbated. What Christina K. saw indicates defendant's conduct toward Christina K. and her daughters was sexually motivated. Defendant's psoriasis on his elbows, lower legs and knees did not explain his conduct.

In addition, the trial court instructed the jury on the presumption of defendant's innocence, the prosecutor's proof burden, and the limited use of other sexual offense evidence. The trial court told the jury evidence of other sexual offenses was not sufficient by itself to prove defendant committed the charged offenses. These instructions helped assure the jury did not convict defendant of the charged offenses merely because uncharged conduct evidence indicated defendant had a criminal disposition. (*Falsetta, supra*, 21 Cal.4th at p. 920.) And based on the jury's questions, it appears the jury focused on defendant's conduct toward Christina K. and her daughters, not on the uncharged conduct evidence, during deliberations.

On this record, any error in admitting evidence of the balcony incident was harmless beyond a reasonable doubt.

### C

Defendant next contends evidence that he appeared naked in his neighbor's backyard in 1991 was improperly admitted under Evidence Code section 1108 because that incident does not involve a sexual offense.

20

Again, however, even if the backyard evidence should not have been admitted because (a) there was insufficient evidence that defendant's conduct was sexually motivated (*In re Smith, supra,* 7 Cal.3d at p. 366 [section 314 requires proof that the defendant intended to direct public attention to his genitals for purposes of sexual arousal, gratification or affront]), or (b) Evidence Code section 352 required the exclusion of Bingham's testimony, for the reasons we explained *ante*, any error in admitting evidence of defendant's uncharged conduct was harmless.

## DISPOSITION

The convictions on counts two and three are reversed and the sentences associated with those convictions are stricken. The matter is remanded to the trial court with directions to impose sentence on counts four and five and to determine whether a stay pursuant to section 654 is appropriate. After resentencing, the trial court is directed to amend the abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

      MAURO      , J.

We concur:

      HULL      , Acting P. J.

      MURRAY      , J.

21