945 P.2d 1290

**STATE of Arizona, Appellee.**

v.

**Eduardo LEON, Appellant.**

**No. CR–96–0057–PR.**

Supreme Court of Àrizona,
En Banc.

Sept. 30, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, R. Wayne Ford, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch by Stephen R. Collins, Deputy Public Defender Attorneys, Phoenix, for Appellant.

## OPINION

ZLAKET, Chief Justice.

On May 24, 1993, two undercover detectives met defendant Eduardo Leon at a supermarket in Gilbert to discuss the purchase of 150 pounds of marijuana. He allegedly told them that the price would be $660 per pound. After a co-defendant, Francisco Gastelum–Saucedo, verified that the officers had enough money for the transaction, Leon led them to a nearby dairy where the contraband was stashed in an automobile. Another co-defendant, Leopoldo Gastelum, opened the trunk, enabling the officers to observe several bales of marijuana. An arrest signal was then given, and uniformed police arrived on the scene. Although defendant attempted to flee, he was quickly apprehended.

On June 3, 1993, defendant was indicted along with Leopoldo Gastelum, Juan Gastelum, and Francisco Gastelum–Saucedo for offering to sell more than eight pounds of marijuana, a class two felony. *See* A.R.S. § 13–3405(B)(9). During trial, the judge severed Francisco's case because his defenses were antagonistic to those of his companions. Although the major thrust of the state's case appears to have been directed at defendant Leon, the evidence against all of the participants was much the same. The primary difference was that defendant carried on most of the conversation with the officers, probably because he alone spoke English. At the conclusion of the proceedings, defendant was convicted, while Leopoldo and Juan Gastelum were acquitted.

Defendant filed a timely notice of appeal. In a memorandum decision, the court of appeals was extremely critical of the prosecutor's conduct at trial, but nevertheless affirmed the conviction and sentence. *State v.*

*Leon,* No. 1 CA–CR 94–0108 (Dec. 26, 1995) (mem. dec.).

## I. *Prosecutorial Misconduct*

The prosecutor began his opening statement to the jury by announcing that, in setting forth the state's case, he was "representing the people." We need not decide whether this remark, standing alone, would have been objectionable because he immediately added: "When the police have charged or arrested an individual, the County Attorney's Office reviews to determine if there is [sic] sufficient grounds to charge...." Defense counsel objected, but for reasons unknown, the record reflects no ruling by the court.

Later, during his initial closing argument, the prosecutor stated:

You've heard throughout the trial that we made reference to police reports and such. Police reports themselves do not come in as an exhibit in this instance. They have not been admitted and therefore, you will not be getting a copy of that since it does include items which the Judge makes various rulings on.

This time the court sustained a defense objection and instructed the jurors that the lawyer's comments "should not be construde [sic] by you that there is other evidence out there which has not been received which is evidence of guilt. The only evidence that you're to consider is that which has been admitted and nothing else."

Despite this clear admonition, in his final closing argument the same deputy county attorney said: "Defense counsel in the opening stated this is not TV. There is not the benefit of all the items you see. We're not going to have the inside information as to what occurred in prior transactions if there were any prior transactions." The court again sustained an immediate defense objection, adding: "Strike those last comments. This is rebuttal to the comments that were made today not in some other case or in other cases or arguments made on TV."

When one of the defense attorneys then asked to approach the bench, the judge replied: "I know what you are going to tell me. I cautioned the jurors to ignore those comments." The judge made no further remarks at that time.

After the jury began its deliberations, defense counsel moved for a mistrial based on the cumulative effect of the foregoing statements. Although the trial judge eventually denied the motion, he expressed consternation over the deputy county attorney's conduct, as evidenced by the following remarks:

For the life of me, I can't figure out why you would say something like that.... I think I cured it by the cautionary instruction.

And maybe I should teach you a lessen [sic] and grant the motion for a mistrial and then you won't make statements like that. I can't believe you said something like that.

Following additional comments by the lawyers, the court continued:

You used the words prior transactions. Those are the words that you used. That conjures up an image that this has been going on; other deals, other transactions, other involvement. That is the image that was conjured up maybe by the jury, hopefully that my instructions were effective and an appellate court will see that that was effective. And for the life of me, why you would say in the opening statements you reviewed the evidence as to why you— before you would prosecute. And I have no idea why you would say that.

And that totally boggles my mind when you say you reviewed the evidence and gave your seal of imprimatur on the evidence is irrelevant and highly prejudicial.

Obviously you think there is a case here, that is why you are prosecuting it. And obviously it is a case that you're prosecuting. And I don't see that much prejudice that can be overcome by the sustaining to the objection. But for the life of me, I can't see why you would want to invite a mistrial or an appellate issue.

While the quality of the transcript leaves much to be desired, it is clear that the trial judge was greatly disturbed by what had occurred. When the prosecutor attempted to explain his conduct, the court responded with exasperation:

> Can you not see the prejudicial impact that that has? If you can't, I hope you see it now. This jury has no business being told what stages this case goes through before it's found to be appropriate to be tried before them.
>
> Their determination, their task is very simple. Has the case been proven beyond a reasonable doubt. The fact that there is an indictment, we tell them there's no significance to that.
>
> We tell them the only significant things that happen are what happens in this case. And we tell them that the State must prove its case beyond a reasonable doubt. And to cloud up the issue to me is totally inappropriate, and I hope sufficiently cured in the eyes of the appellate court.
>
> I believe I have cured it by precautionary instructions. But it boggles my mind that I had to intervene in that fashion in the opening statement—in both the opening statements and the closing arguments.

Given the transcript's lack of clarity, it is difficult to tell whether the court was referring to the prosecutor's opening statement, or to his initial closing argument. If the former, the record does not support the judge's recollection of having intervened. As we have previously noted, there is no showing that he ruled on the defense objections or gave cautionary instructions to the jurors. In fact, other than as indicated, the record reflects only that the court delivered standard instructions—forbidding a finding of guilt "just because [defendants] have been accused of this crime," and cautioning that what the lawyers said was not evidence.

■ We share the trial court's frustration over the repeated misconduct of counsel. There is little doubt that the prosecutor's comment in opening statement attempted to place the prestige of the government behind his case. Even though his remarks may not have adhered to the typical contours of "vouching" because they did not refer to a particular witness, see *State v. Bible,* 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993)(prosecutorial vouching occurs when state places prestige of government behind its witness), they were nonetheless improper. *See United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985).

■ The attorney continued to violate standards of appropriate conduct at the conclusion of the trial. Although advocates are ordinarily given wide latitude in closing argument, their comments must still be "based on facts the jury is entitled to find from the evidence and not on extraneous matters that were not or could not be received in evidence." *State v. Dumaine,* 162 Ariz. 392, 402, 783 P.2d 1184, 1194 (1989); *see also United States v. Reagan,* 694 F.2d 1075, 1080 (7th Cir.1982)(referring to the "fundamental rule, known to every lawyer" that "argument is limited to the facts in evidence"). Here, nothing was admitted pertaining to previous drug transactions, which alone should have precluded the state from mentioning them in closing. *United States v. Foster,* 982 F.2d 551, 555 (D.C.Cir.1993). Similarly, by implying that police reports contained other "bad acts," the deputy county attorney referred to matters not in evidence and presumably inadmissible under Rule 404, Ariz.R.Evid. This misconduct was particularly egregious considering that the court had earlier excluded statements regarding a prior incident because they had not been formally disclosed in advance of trial. *See* Rule 15.1, Ariz. R.Crim.P.

## II. *Prejudice*

■ We adhere to the general rule that attorney misconduct, by itself, does not always require reversal. *Dumaine,* 162 Ariz. at 400, 783 P.2d at 1192. Our obligation is to determine whether it can be said beyond a reasonable doubt that counsel's statements did not affect the verdict. *State v. Krone,* 182 Ariz. 319, 321, 897 P.2d 621, 623 (1995).

The prejudice that may result from vouching and improperly introduced character evidence is well-documented. For example, in *United States v. Young*, the Supreme Court discussed two dangers of prosecutorial vouching:

[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

470 U.S. at 18, 105 S.Ct. at 1048. The risk of prejudice from "prior bad act" evidence is so severe that an evidentiary rule has been created to minimize it. *See* Rule 404, Ariz. R.Evid.; *see also* 1A John H. Wigmore, *Evidence* § 58.2, at 1212 (Tillers rev. 1983) ("The natural and inevitable tendency of the [fact finder] . . . is to give excessive weight to the vicious record of crime thus exhibited and either to allow it to bear too strongly on the present charge or take the proof of it as justifying a condemnation, irrespective of the accused's guilt . . . ."). In this case, the prosecutor's remarks about "prior transactions" and police reports strongly implied that there had been past criminal activity involving one or more of the defendants.

The state contends that in the opening statement the prosecutor was "about to vouch for the credibility of [his] witnesses" but defense counsel's interruption prevented the misconduct from occurring. We disagree. By the time of the objection, the prosecutor had essentially stated that after police arrest an individual, the county attorney's office must find sufficient grounds to charge. Additionally, because the record does not reflect a ruling or a curative instruction by the court, the potential harm went unmitigated.

Concerning the prosecutor's reference to police reports, the state claims that any harm was alleviated by the court telling the jury it should not interpret counsel's comments to mean that evidence outside the record pointed to guilt. Unfortunately, we cannot be reasonably certain that this instruction was sufficient to eliminate any damage.

Finally, the state contends for the first time on appeal that the county attorney's comments in closing argument were not improper because they were invited or provoked by defense counsel. This claim is without merit. "We recognize that where one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject." *Pool v. Superior Court*, 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984) (citations omitted). However, nothing justifies going outside the record to suggest that there are facts not in evidence refuting the other side's remarks. *See State v. Woods*, 141 Ariz. 446, 455, 687 P.2d 1201, 1210 (1984). Likewise, the prosecutor was not entitled to refer, by innuendo or otherwise, to evidence that had been ruled inadmissible.

### Disposition

We cannot speculate why the other defendants were acquitted. We are simply unable to say beyond a reasonable doubt that the prosecutor's misconduct did not contribute to the verdict against defendant Leon. The case is therefore reversed and remanded for a new trial.

JONES, V.C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.