NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

STATE OF ARIZONA, *Appellee,*

*v.*

THOMAS LEROY CROM, IV, *Appellant.*

No. 1 CA-CR 14-0751
FILED 11-10-2015

———————————————

Appeal from the Superior Court in Maricopa County
No. CR2013-441624-001
The Honorable Hugh E. Hegyi, Judge

**REVERSED AND REMANDED**

———————————————

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

The Hopkins Law Office PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

<hr />

**MEMORANDUM DECISION**

Judge *Pro Tempore* Dawn M. Bergin[1] delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Andrew W. Gould joined.

<hr />

**B E R G I N**, Judge:

**¶1**        Thomas Crom appeals his conviction and sentence for controlling another's means of transportation while knowing or having reason to know it was stolen, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1814(A)(5) (2010). On appeal, Crom argues that the superior court erred by: (1) denying his motion for judgment of acquittal under Rule 20 of the Arizona Rules of Criminal Procedure; (2) permitting the prosecutor to question him on cross-examination about his failure to produce potentially exculpatory witnesses, which, he contends, both improperly shifted the burden of proof and created an improper inference that he was able but failed to produce these witnesses; and (3) improperly instructing the jury on the statutory inference under A.R.S. § 13-2305(1) (2010). While we reject Crom's arguments that the prosecutor's questioning improperly shifted the burden to him, we do find that the questioning about Crom's failure to call one witness, Hans Barkowski, created an improper adverse inference.[2] And, because we cannot say beyond a reasonable doubt that this inference did not contribute to or affect the jury's verdict, we reverse and remand for a new trial.

**¶2**        To avoid any issues on remand regarding the propriety of the jury instruction on the statutory inference of A.R.S. § 13-2305(1), we

<hr />

[1]The Honorable Dawn M. Bergin, Judge, Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and Revised Statutes ("A.R.S.") sections 12-145 to -147 (2003).

[2]Because we reverse and remand based on the improper inference created as to Hans, we need not reach Crom's arguments regarding the questioning of four other witnesses.

address that issue below and find that the superior court properly instructed the jury.[3]

## FACTS AND PROCEDURAL BACKGROUND

¶3 Police arrested Crom and Hans Barkowski in the summer of 2013 after finding Crom driving a stolen car with Hans in the passenger seat. Crom first told police that "he did not own the vehicle," but "had borrowed it from a friend whose name he didn't know and it was actually that friend's brother's whose name he didn't know." He later changed his story, stating that "he got the keys to the car from a guy that he met at a bar in Old Town Scottsdale," but "[h]e didn't remember his name" or "which bar it was."

¶4 At trial, Crom testified that the day of his arrest began at his friend Matt's house where Hans arrived in the stolen car, claiming he had located Crom's recently stolen truck. Before leaving to find the truck, Crom retrieved a jiggle key that he intended to use to try to start the truck because he no longer had keys to it. Crom said he saw the stolen car for the first time when he and Hans left in it to find his truck, and although Hans drove the stolen car to Matt's house, Crom asked for and received the car keys from Hans because he knew Hans lacked a valid driver's license. When the prosecutor noted that Crom's testimony as to how he obtained the keys was inconsistent with his prior statements to police, Crom admitted that he previously told police "a bunch of lies" because he did not want to "snitch" on Hans.

¶5 Crom further testified that after leaving Matt's apartment, he and Hans drove to the location of the stolen truck and spoke with an unnamed woman about the truck. After failing to locate the person with the keys to his truck, Crom broke into it and tried to start the engine with the jiggle key, damaging the ignition, which, he said, his aunt later paid to repair. After failing to start the truck, Crom and Hans left to find a friend to help hotwire it. The police arrested them shortly thereafter.

¶6 Prior to trial, Crom notified the prosecutor and the superior court of his intent to call Hans as a trial witness. The superior court appointed counsel for Hans, who was incarcerated at the time, and had

[3]Because we reverse and remand for a new trial based on the admission of testimony creating an improper adverse inference, we need not reach Crom's argument that the superior court erred in denying his motion under Arizona Rule of Criminal Procedure 20.

him transported to court on the first day of trial. Counsel for Hans informed the superior court that Hans intended to invoke his Fifth Amendment right to remain silent as to all questions. Crom argued that Hans should be forced to invoke his right to remain silent in front of the jury because he might change his mind on the stand. Relying on Arizona Rule of Evidence 403, the superior court found that calling Hans as a witness simply to have him invoke his right to remain silent would "be a needless use of the jury's time," and excused Hans from testifying.

¶7        During cross-examination of Crom, and over the objection of defense counsel, the superior court allowed the prosecutor to ask Crom about Hans' absence from court, suggesting that Crom failed to call Hans because he would not corroborate Crom's story. The superior court denied defense counsel's request on redirect that Crom be permitted to tell the jury that Hans was unavailable because he had invoked his right to remain silent.

¶8        The jury found Crom guilty of theft of means of transportation.

## DISCUSSION

¶9        Crom proffers two bases for his argument that the superior court erred in allowing the prosecutor to question him about his failure to call potentially exculpatory witnesses at trial: (1) it resulted in an impermissible shifting of the burden of proof to him; and (2) it created an impermissible adverse inference that the witnesses would not have corroborated his story. Crom also challenges the constitutionality of the superior court's jury instructions on the statutory inference under A.R.S. § 13-2305(1).

I.        Burden-Shifting

¶10        Under Arizona law, "[w]hen a prosecutor comments on a defendant's failure to present evidence to support his or her theory of the case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify." *State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24, 199 P.3d 686, 692 (App. 2008); *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987) ("Even where the defendant does not take the stand, the prosecutor may properly comment on the defendant's failure to present exculpatory evidence which would substantiate defendant's story.").

**¶11** Here, the prosecutor's questions during cross-examination and his comments during closing argument regarding the absent witnesses did not direct the jury's attention to Crom's failure to testify because Crom did testify. Thus, we reject Crom's argument that the questioning resulted in improper burden shifting. *See State v. Pandeli*, 215 Ariz. 514, 525, ¶ 30, 161 P.3d 557, 568 (2007).

## II. Improper Inference

**¶12** Because Hans invoked his Fifth Amendment right to remain silent and was therefore unavailable to both parties, we find that the prosecutor's questioning about Hans' absence created an improper inference, and the superior court erred in admitting the testimony without any curative instructions.

**¶13** When a defendant attacks the accuracy of the State's evidence, "elemental fairness" allows the State to comment on the defense's failure to present potentially exculpatory witnesses to which he has access. *McDougall*, 153 Ariz. at 160, 735 P.2d at 770. The defendant's "access" to these witnesses is the foundation of this "elemental fairness," and if a witness is equally available to both sides or not available to either side, no party is permitted to create an inference from any other party's failure to call that witness. *Id.*; *State v. Condry*, 114 Ariz. 499, 500, 562 P.2d 379, 380 (1977) (citation omitted).

**¶14** In assessing the propriety of a comment regarding an uncalled witness, the superior court may consider "whether the witness was under the control of the party who failed to call him or her;" "whether the party failed to call a seemingly available witness whose testimony it would naturally be expected to produce if it were favorable;" and "whether the existence or nonexistence of a certain fact is uniquely within the knowledge of the witness." *Gordon v. Liguori*, 182 Ariz. 232, 236, 895 P.2d 523, 527 (App. 1995) (citations omitted).

**¶15** Despite the superior court having excused Hans as a witness because he invoked his Fifth Amendment right to remain silent, the prosecutor repeatedly questioned Crom about Hans' absence, and, in doing so, created a prejudicial inference that Crom had not called Hans because his testimony would not support Crom's story. This prejudice was compounded by the superior court's limitation on the scope of information that would be provided to the jury on Hans' unavailability. The relevant testimony follows:

Prosecutor: Where is Hans right now?

Crom: In jail.

Prosecutor: And how long has he been in custody, do you know?

Crom: Nine months, ten months.

Prosecutor: But you do know exactly where he is?

Crom: Yes, I do.

Prosecutor: But yet he's not here to tell the jury and verify what you want the jury to believe; correct?

¶16 After the superior court overruled defense counsel's burden-shifting objection, the questioning continued:

Prosecutor: You were transported today by the Sheriff's Office to court; correct?

Crom: Yes.

Prosecutor: And Hans . . . is housed in the Sherriff's custody; correct?

Crom: Yes, he is.

Prosecutor: So Hans could have been brought to this court in the same manner you were to tell this jury exactly what you want them to believe after you told the police two different stories and a third story for the jury here in trial; correct?

Crom: Correct.

Prosecutor: And yet he's not here to do that, to back up your story? That's a yes or no question.

Crom: No, he's not.

¶17 On redirect, the prosecutor objected to the following question posed by defense counsel: "You don't have any control over how

deputies . . . transport[] people; correct?"  During a bench conference, the superior court explained that it could not "have the jury believe that [Crom] didn't have the ability to get [Hans to court] if [Crom] wanted him [t]here."  Defense counsel responded that the prosecutor told the jury, falsely, that Crom *could* bring Hans to court when in fact he *could not* because he had invoked his Fifth Amendment rights.

> Defense counsel: He invoked. He invoked. Can I talk about that?
>
> The Court: No, we're not going into whether [Hans] invoked.
>
> Defense counsel: Judge, Mr. Crom did bring [Hans] here in front of all of us.  He did bring him here so that's absolutely—he did bring him here.
>
> . . .
>
> Prosecutor: Well, again, Judge, State's concern, the Court picked up on, is the false impression that's being given to the jury that somehow the defendant could not procure the witness.
>
> Defense counsel: We'll talk about that because he did procure the witness.  He did procure him and we all saw him.
>
> . . .
>
> The Court: We will not get into invocations.
>
> Defense counsel: Your Honor, the Court just allowed [the prosecutor] to say to Mr. Crom: You have the power to bring Hans [to court] . . . and you didn't.  My client did bring Hans . . . here in front of all of us, Judge, and he should be able to tell the jurors that.
>
> The Court: You can tell the jurors that [Hans] came.  You can't tell them whether or not [Hans] invoked or didn't invoke. . . . You want him to invoke in front of the jury, you had the

right to ask for that, but you chose not to [do]
so.

**¶18**        In short, the superior court ruled that defense counsel could "say that [Hans] came [to court] to talk to [Crom]" but they were "leaving it at that" and "not getting into whether he invoked or didn't invoke."

**¶19**        During his closing, the prosecutor again mentioned the absence of corroborating witnesses stating "the power of subpoena cuts both ways," and "the Defense . . . can subpoena whoever they choose to come in and testify."

**¶20**        Here, because Hans was not available to Crom or to the State due to the invocation of his right to remain silent, the State was not permitted to comment on his absence from trial. *See McDougall*, 153 Ariz. at 160, 735 P.2d at 770. Thus, the superior court erred by admitting this testimony without allowing clarification by defense counsel or providing the jury with curative instructions. *See State v. Payne*, 233 Ariz. 484, 513, ¶ 120, 314 P.3d 1239, 1268 (2013) (no reversible error for improper questioning by prosecutor where the court sustained objections and issued curative instructions); *State v. Leon*, 190 Ariz. 159, 163, 945 P.2d 1290, 1294 (1997) ("because the record does not reflect a ruling or a curative instruction by the court, the potential harm went unmitigated").

**¶21**        We now turn to whether the superior court's error was harmless. *See State v. Ramos*, 235 Ariz. 230, 234, ¶ 8, 330 P.3d 987, 991 (App. 2014) (harmless error review used when objections are raised at trial to a prosecutor's arguments or comments) (citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005) ("Reviewing courts consider alleged trial error under the harmless error standard when a defendant objects at trial and thereby preserves an issue for appeal.").

**¶22**        The State argues that any conceivable error was harmless because the impeachment was cumulative to other legitimately admitted evidence that undermined Crom's credibility, including his prior felony convictions, his admission to telling detectives "a bunch of lies," and his failure to call four other witnesses mentioned on direct-examination. We disagree.

**¶23**        First, we note that Hans was a key player in the events leading to Crom's arrest, and the State does not suggest otherwise. According to Crom, Hans drove the car to Matt's house; initiated contact with Crom to tell him about his stolen truck; initially possessed the car

keys; gave Crom the car keys; directed Crom to the unnamed woman's house; told Crom not to speed; and was in the car at the time of the arrest.

¶24        The centrality of Hans' involvement was also not lost on the jury, who submitted approximately seventeen questions regarding Hans. The superior court refused to ask several of these questions, and answers elicited from others greatly minimized the apparent role of Hans in the events.   For instance, jury question 8 asked why a detective who interviewed Crom did not ask him about Hans during the interview.  The detective responded that he "honestly [did not] have an answer for that," except that he knew "that when detectives had arrested [Crom and Hans], [Crom] was driving the vehicle and [he] was interested about what [Crom] was doing driving the vehicle and where he got the car," and once Crom "said that he got the car from someone [else], [he] didn't have any reason" to ask about Hans because Crom "wasn't giving a story about Hans."  The improper adverse inference therefore greatly downplayed the importance of Hans' involvement in this case.

¶25        In addition, detectives on the case provided testimony that was favorable to Crom.  For example, one detective testified that unlike most stolen cars, here there were no signs of forced entry, such as a broken window, a jammed ignition, hanging wires, or other damage.   Further, police found the actual car key in the ignition at the time of Crom's arrest, and Crom had a reasonable explanation for having a jiggle key in his possession: he intended to use it to try to start his truck.

¶26        Given the significance of Hans' role in the events leading to Crom's arrest and the existence of testimony favorable to Crom, we cannot say that the improper adverse inference created by the prosecutor was harmless beyond a reasonable doubt.  We therefore reverse Crom's conviction for theft of means of transportation and remand for a new trial.

III.    Jury Instructions

¶27        Crom also challenges the constitutionality of the superior court's jury instructions on the statutory inference under A.R.S. § 13-2305(1).  Specifically, Crom argues the jury instruction unconstitutionally shifted the burden of proof to him by forcing him to testify, or by forcing him to produce other evidence.  To avoid these on remand, we address them now.  We review constitutional challenges *de novo* and construe statutes, when possible, to uphold their constitutionality.  *State v. Hargrave*, 225 Ariz. 1, 13, ¶ 42, 234 P.3d 569, 581 (2010).

¶28     Consistent with the statute, and as requested by the prosecutor, the superior court instructed the jury as follows:

> Proof of possession of property recently stolen, unless satisfactorily explained, may give rise to an inference that the defendant was aware of the risk that such property had been stolen or in some way participated in its theft.
>
> You are free to accept or reject this inference as triers of fact. You must determine whether the facts and circumstances shown by the evidence in this case warrant any inference that the law permits you to make.
>
> Even with the inference, the State has the burden of proving each and every element of the offense of theft of means of transportation beyond a reasonable doubt before you can find the defendant guilty.

¶29     "There is a strong presumption supporting the constitutionality of statutes, and the party challenging the validity of a statute has the burden to establish its invalidity beyond a reasonable doubt." *State v. Ramsey*, 211 Ariz. 529, 536, ¶ 17, 124 P.3d 756, 763 (App. 2005) (quoting *State v. Padilla*, 169 Ariz. 70, 71, 817 P.2d 15, 16 (App. 1991)). "When evaluating the constitutionality of an inference, our first task is to determine whether the inference is mandatory or permissive." *State v. Cole*, 153 Ariz. 86, 89, 734 P.2d 1042, 1045 (App. 1987). "Mandatory inferences violate the due process clause if they relieve the state of its burden to prove, beyond a reasonable doubt, every essential element of an offense." *Id.* Instructions creating a permissive inference, however, ordinarily do not shift the burden of proof because the State still must convince the jury that the proven predicate facts suggest inferring the conclusion. *Id.*

¶30     Here, the jury instruction set forth a permissive inference, not a mandatory presumption, given the use of the phrase "may give rise." *See State v. Mohr*, 150 Ariz. 564, 567, 724 P.2d 1233, 1236 (App. 1986) (concluding that "gives rise to the inference" constitutes a mandatory presumption); *State v. Moya*, 138 Ariz. 12, 14, 672 P.2d 964, 966 (App. 1983) ("may determine" is permissive); *State v. Earby*, 136 Ariz. 246, 247-48, 665 P.2d 590, 591-92 (App. 1983) ("may be inferred" is permissive). The permissive nature of the instruction is reinforced by the sentences that

follow: "You are free to accept or reject this inference as triers of fact. You must determine whether the facts and circumstances shown by the evidence in this case warrant any inference that the law permits you to make." Thus, because the inference is permissive, we reject Crom's argument that the instruction unconstitutionally shifted the burden of proof to him.

**¶31** Finally, Crom argues that the facts of the case did not support giving the permissive inference instruction. Because we reverse and remand Crom's conviction, we need not address this argument.

**CONCLUSION**

**¶32** For the foregoing reasons, we reverse Crom's conviction for theft of means of transportation and remand for a new trial.



Ruth A. Willingham · Clerk of the Court
FILED: ama