[No. G031514. Fourth Dist., Div. Three. Dec. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
NICOLAS LIMON CARBAJAL, Defendant and Appellant.

## COUNSEL

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—We have been asked to decide whether defendant Nicolas Limon Carbajal's conviction for indecent exposure (Pen. Code, § 314, subd. 1) is valid where there is no evidence that anyone actually saw his naked genitals. We conclude it is, based on circumstantial evidence that actual exposure occurred in the presence of other persons. We arrive at this conclusion after determining that visual observation of the exposed genitals is not an element of the offense. Further, we disagree with defendant's contention that the trial court erred in refusing to give a special

instruction defining exposure of one's person as the display of a person's naked genitalia. We therefore affirm.

## FACTS

On two different occasions in May 2001, Norma Villa Bueno observed that defendant appeared to be masturbating as he sat at a table in a Mexican restaurant where she worked as a cashier. The first time, after eating his food, defendant placed his fist inside his shorts and moved his hand up and down for about 5 to 10 minutes. Three weeks later, defendant entered the restaurant, and, after eating, engaged in similar conduct; only this time, he ejaculated onto the floor beneath the table. The area had been clean before defendant sat there. Prior to leaving the restaurant, defendant wiped his hand off with a napkin and threw a newspaper on top of the puddle of semen. The police officers who later took a report of the incident did not collect a sample of the semen.

Villa Bueno testified that she did not actually see defendant's penis on either occasion. She further testified that she could not be sure defendant had his fist on his penis during the first incident, but the second time she was sure that he did. On that occasion, defendant wore a t-shirt that fell below his crotch and a pair of loose-fitting, knee-length shorts. Although Villa Bueno's view of defendant's genitals was partially obscured by chairs and by his clothing, she could tell he had taken his penis out of his shorts while holding it in his fist because she could see the skin of his fist "[w]hen he made strong movements . . . ." She recognized the white substance deposited on the floor underneath the table as semen. Another restaurant employee also saw defendant moving his fist up and down in his crotch area during the second incident, but she could not tell if his hand was inside or outside of his shorts.

Defendant's girlfriend testified that defendant had a rash on his testicles and that she frequently saw him reach his hand down inside of his pants to scratch that area. But she never saw him do this in a public place. Defendant used a white cream which had the consistency of a thick lotion for his rash. Defendant's girlfriend testified that he did not carry the cream around with him, and she did not see him use it very often.

After the prosecution rested, the trial court granted defendant's motion for acquittal on the indecent exposure count relating to the first incident for lack of sufficient evidence. The jury found defendant guilty of indecent exposure and lewd conduct relating to the second incident, but not guilty of lewd conduct as to the first incident.

## DISCUSSION

*Sufficiency of the Evidence*

### 1. *Overview of the Issue*

Defendant argues his conviction for indecent exposure must be reversed because the witnesses did not actually see his genitals.

Penal Code section 314, subdivision 1, makes it a crime for a person to "willfully and lewdly" "[e]xpose[] his [or her] person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . ." Generally, a conviction for indecent exposure requires proof of two elements: "(1) the defendant must willfully and lewdly expose the private parts of his person; and (2) such exposure must be committed in a public place or in a place where there are present other persons to be offended or annoyed thereby." (*People v. Swearington* (1977) 71 Cal.App.3d 935, 943 [140 Cal.Rptr. 5].)

The Attorney General contends the statute "does not require that the victim see the perpetrator's genitals, but only that the perpetrator display his or her genitals in a public place or place where others are present." As the Attorney General indicates, one definition of the word "expose" is "to cause to be visible or open to view." (Merriam-Webster's Collegiate Dict. (10th ed. 1999) p. 410; see also *People v. Massicot* (2002) 97 Cal.App.4th 920, 926 [118 Cal.Rptr.2d 705].) But defendant argues there is inadequate evidence that he exposed himself since neither witness saw his penis. Thus, we are left with the question of whether a witness's visual observation of a defendant's private parts is necessary to support a conviction for indecent exposure.

### 2. *The Common Law Offense of Indecent Exposure*

As did our colleagues in *People v. Massicot,* we note the remarkable absence of case law interpreting the language of Penal Code section 314, subdivision 1. (*People v. Massicot, supra,* 97 Cal.App.4th at p. 926.) In that case, the court had to determine whether a defendant who concealed his genitals but publicly exposed other parts of his body, i.e., his bare shoulders, buttocks, and thighs, could be convicted of indecent exposure. The court reversed the conviction, concluding the word "person," as used in the statute, means an "entirely unclothed body, including by necessity the bare genitals . . . ." (*Id.* at pp. 924, 932.) In reaching this conclusion, the court turned to the common law offense of indecent exposure which, it determined, "require[d] display of the genitals." (*Id.* at p. 928.)

Penal Code section 314 was enacted in 1872 as section 311; no substantive changes have been made to subdivision 1 since that time. "We presume that when the statute was enacted the Legislature was familiar with the common law rule, and 'when it couches its enactment in common law language, that its intent was to continue those rules in statutory form. . . .' [Citation.]" (*People v. Martin* (1985) 168 Cal.App.3d 1111, 1116 [214 Cal.Rptr. 873].) Thus, we may rely on "the common law meaning of the language in question," here the term "expose," to resolve any ambiguity in its intended meaning. (*In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116]; see also 2B Singer, Statutes and Statutory Construction (6th ed. 2000 rev.) § 50:01, p. 140 ["[a]bsent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect"].) We therefore turn to the common law to determine whether visual observation of the offender's genitals is an element of the offense of indecent exposure.

"At common law, the 'indecent exposure' of the private parts of a person to public view was treated as a nuisance and punishable as a misdemeanor. It was not required that the exposure be observed; it was necessary merely that the exposure occur in a public place." (3 Wharton's Criminal Law (15th ed. 1995) § 308, pp. 196–200, fns. omitted; see also Annot., Criminal Offense Predicated upon Indecent Exposure (1964) 94 A.L.R.2d 1353, 1355, § 3 ["the elements of the offense of indecent exposure at common law are a wilful and intentional exposure, and its occurrence in a public place and in the presence of an assembly"].) Early cases from other jurisdictions confirm this view of the common law.

In 1835, the North Carolina Supreme Court upheld a defendant's conviction for publicly exposing his naked person even though it was not alleged that the act had been committed in the presence of others. (*State v. Roper* (1835) 18 N.C. 208.) The court determined, "It is not necessary . . . that the disgusting exhibition should have been actually seen by the public; it is enough, if the circumstances under which it was obtruded were such as to render it probable that it would be publicly seen . . . ." (*Id.* at p. 209.) Some years later, the North Carolina Supreme Court revisited the issue in considering whether a defendant charged with profanely swearing and cursing in public could be convicted for such offense absent any allegation that the profanity had been heard by others. (*State v. Pepper* (1873) 68 N.C. 259.) The court again looked to common law cases involving indecent exposure and concluded that "when the nuisance charged is an offence to the sense of sight, it must be charged and proved that it was exposed to the view of divers persons." (*Id.* at p. 262.)

At the turn of the last century, the Supreme Court of Iowa upheld a conviction for indecent exposure based on an indictment that failed to allege

anyone saw the exposure of the defendant's person. (*State v. Martin* (1904) 125 Iowa 715 [101 N.W. 637, 638].) "It will be observed that the crime as defined by the statute does not require that the exposure shall be made in the actual sight of any person, and . . . 'if a case should be made by confession, corroborated by circumstances, a defendant might properly be convicted of this offense, although no person witnessed the indecent act.' . . . The words 'indecent exposure' clearly imply that the act is either in the actual presence and sight of others, or is in such a place or under such circumstances that the exhibition is liable to be seen by others, and is presumably made for that purpose . . . ." (101 N.W. at p. 638.)

### 3. *Recent Indecent Exposure Cases from Other Jurisdictions*

The common law view of the crime is still prevalent in other jurisdictions. Recently, a Michigan court of appeals considered, as an issue of first impression, whether the exposure must be witnessed before a conviction for indecent exposure could be upheld. (*People v. Vronko* (1998) 228 Mich.App. 649 [579 N.W.2d 138, 141].) There, a witness saw the defendant sitting in a parked vehicle and noticed that he "was wearing a long-sleeved shirt and that his legs were bare." (579 N.W.2d at p. 140.) The witness "could not tell whether defendant was wearing any shorts or underwear," but "testified that defendant's 'right hand was in his crotch and it was just going like gang-busters,' " and "it looked like defendant had something in his hand, but she could not see what it was." (*Ibid.*) The witness was certain "defendant was exposing himself to the passing school children and masturbating," although she did not actually see his penis. (*Ibid.*)

Noting that the language of the statute did not require a witness who actually observed the exposure, the court reasoned that "if the offense does in fact include such an element, it must be contained within the words 'open or indecent exposure.' " (*People v. Vronko, supra,* 579 N.W.2d at p. 141.) Examining the issue in the light of the common law, the court upheld the defendant's conviction, concluding, "there is no requirement that the defendant's exposure actually be witnessed by another person in order to constitute 'open or indecent exposure,' as long as the exposure occurred in a public place under circumstances in which another person might reasonably have been expected to observe it." (579 N.W.2d at p. 142.)

Similarly, the court in *Commonwealth v. Poillucci* (1999) 46 Mass.App.Ct. 300 [705 N.E.2d 626] upheld the defendant's conviction for open and gross lewdness based on the 10-year-old witness's "testimony that the defendant was 'pulling up and down' on a 'skin-colored belt.' " (705 N.E.2d at p. 629.) The court found the testimony supported "a rational inference that the defendant was masturbating in front of [the child] and exposing himself.

[Citation.]" (*Ibid.* [reciting other corroborative evidence of exposure that the defendant had exposed his abdomen and undone his pants].) The court noted that it did not intend to suggest that exposure could only be proven by eyewitness testimony, stating, "absent eyewitness testimony of the genitalia, the Commonwealth could still present evidence sufficient to prove exposure had occurred. [Citaitons.]" (*Id.* at p. 629, fn. 3.)

For analogous reasons, the court in *State v. Fly* (1998) 348 N.C. 556 [501 S.E.2d 656] upheld a conviction for indecent exposure after a man "mooned" a woman. It held that evidence the defendant lowered his pants to his ankles and bent over to bare his buttocks and "moon" the witness was sufficient to support a conviction for indecent exposure because the jury could reasonably find from such evidence that his genitals and anus were exposed as well. (501 S.E.2d at p. 659.)

Texas courts have considered the issue with mixed results. In *Beasley v. State* (Tex.App. 1995) 906 S.W.2d 270, the victim testified that the defendant called out to her while seated in his vehicle with the driver's door open. The victim observed that the defendant "didn't have clothing on from the upper leg to the waist." (*Id.* at p. 271.) She further noted the defendant had his right hand on the steering wheel and his left hand placed like a shield blocking her view of his penis. The majority held there was no exposure since the defendant, though naked from the upper leg to the waist, effectively hid his genitals from view with his hand. (*Id.* at p. 272.) The dissent disagreed "that the word 'expose' . . . require[d] visible sighting." (*Id.* at p. 274 (dis. opn. of Walker, C. J.).)

Five years later, a different Texas appellate court concluded that circumstantial evidence, rather than direct observation of a defendant's genitals, is sufficient to support a conviction for indecent exposure. (*Metts v. State* (Tex.App. 2000) 22 S.W.3d 544, 548.) In *Metts*, the victim testified that she saw the defendant standing by a vehicle; "[h]e was naked from the waist down," his "hands were moving up and down in the area of his genitals and he appeared to be masturbating." (*Id.* at p. 546.) The witness did not actually see the defendant's penis. The court determined the statute required proof only that the defendant's genitals were exposed; "[t]he victim's perception is not an element of the offense. [Citation.]" (*Id.* at p. 547.)

The *Metts* court expressly declined to follow *Beasely*. (*Metts v. State, supra,* 22 S.W.2d at p. 547.) Further, the two justices signing the majority opinion in *Beasley* subsequently split in disagreement over whether the defendant's conduct in exposing himself in his backyard, captured on videotape, but never personally observed by his neighbors, was sufficient evidence of exposure. (*Swire v. State* (Tex.App. 1999) 997 S.W.2d 370, 371.) The

dissenting justice voted to reverse the conviction, concluding that although the defendant exposed his penis, he did so to a videocamera, not another person. (*Id.* at pp. 373–374 (dis. opn. of Burgess, J.).)

Other reviewing courts have overturned convictions for indecent exposure because no one actually saw the defendant's genitals. While less explicit, these cases do not necessarily contradict the common law principle.

In *Commonwealth v. Arthur* (1995) 420 Mass. 535 [650 N.E.2d 787], one witness testified the defendant walked in front of her vehicle and lowered his shorts. After seeing "what she believed was pubic hair," the witness "averted her gaze . . . ." (650 N.E.2d at p. 788.) A second witness saw the defendant pull one side of his shorts down to his knees, causing the left side to " 'jerk[]' down to his mid-thigh." (*Ibid.*) Although both witnesses saw pubic hair, neither saw the defendant's genitals. The Massachusetts court concluded the evidence was not "sufficient to support an inference by the jury beyond a reasonable doubt that [the defendant] . . . had necessarily exposed some portion of his genitalia." (*Id.* at p. 789, fn. omitted.) The court was careful to note, however, that evidence showing a defendant completed the act of exposure after the witness averted his or her eyes might be sufficient to uphold a conviction. (*Id.* at p. 789, fn. 2.)

In *State v. Jaime* (1967) 4 Conn.Cir.Ct. 530 [236 A.2d 474], the witness was a passenger in the defendant's car; she noticed "[t]he fly of [his] trousers became open and [she] observed that he was wearing white underpants and was shaking his hand in the region of his sexual organ." (236 A.2d at p. 475.) The court concluded there was insufficient evidence to support the conviction for indecent exposure because "there was no finding of the exposure of the defendant's person." (*Ibid.*)

■ Our review of the common law and cases from other jurisdictions leads us to conclude that a conviction for indecent exposure under Penal Code section 314, subdivision 1 requires evidence that a defendant actually exposed his or her genitals in the presence of another person, but there is no concomitant requirement that such person actually must have seen the defendant's genitals. Thus, we will uphold defendant's conviction for indecent exposure in the absence of evidence of any direct visual observation of his genitals so long as there is sufficient circumstantial evidence to show that actual exposure occurred.

### 4. *Sufficient Circumstantial Evidence Supports Defendant's Conviction for Indecent Exposure*

■ "In assessing a sufficiency-of-evidence argument on appeal, we review the entire record in the light most favorable to the prevailing party to

determine whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80].) We apply the same standard to convictions based largely on circumstantial evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745 [45 Cal.Rptr.2d 844].) And it is not within our province to reweigh the evidence or redetermine issues of credibility. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

Here, circumstantial evidence shows defendant actually exposed his naked genitals. It includes Villa Bueno's testimony regarding defendant's hand movements, which were open to view, and her observations about the semen deposited beneath the table. Although neither she nor her coworker actually saw defendant's genitals, Villa Bueno testified that she saw the bare skin of his fist as it was wrapped around what appeared to be his penis while he moved it up and down in his crotch area. It is reasonable to conclude that defendant exposed his penis by taking it out of his shorts and holding it in his fist as he masturbated in the restaurant. Had the penis not been exposed, arguably the semen would have been deposited on defendant's clothing rather than on the floor when he ejaculated. Testimony that the substance was semen and not something else was an issue of fact for the jury's determination.

█ Therefore, the evidence was sufficient to support defendant's conviction for indecent exposure.

*Requested Modification of CALJIC No. 10.38*

At trial, relying on *People v. Massicot, supra,* 97 Cal.App.4th 920, defense counsel sought to modify CALJIC No. 10.38 (felony indecent exposure) by adding: " 'Exposes his person' " means "the display of a person's entirely unclothed body, including by necessity the bare genitals." The trial court refused to give the modified instruction, stating, "I'll consider any other alternative, but this one is incorrect. It's an incorrect statement of the law, and it is extremely confusing to a jury." Defendant contends the court erred in failing to give the proposed modification. We disagree.

The issue in *Massicot* was whether the defendant could be convicted of indecent exposure of his "person" where the evidence showed he bared his buttocks, thighs, chest, and shoulders, but not his genitals. In resolving the issue, the court concluded the word "person" in Penal Code section 314, subdivision 1 means an "entirely unclothed body, including by necessity the bare genitals . . . ." (*People v. Massicot, supra,* 97 Cal.App.4th at p. 924.) It explained that although the language of the statute prohibits the exposure of an individual's "person, or the private parts thereof," its plain meaning

requires "display of the naked genitals." (*Id.* at p. 926.) Thus, the court reasoned that while "private parts" refers to the human genitalia, "the word 'person' signifies the body as a whole. [Citation.]" (*Id.* at p. 927.)

■ The issue in this case is whether defendant exposed his genitals, not whether he exposed his "person." Since the evidence here did not indicate defendant was completely naked when he exposed himself, the language from *Massicot* defining the word "person" simply does not apply. As the trial court ruled, defendant's proposed modification to CALJIC No. 10.38 misstated the law in relation to the facts of the case and would have required the jury to find defendant had been "entirely unclothed" in order to find him guilty of indecent exposure. Moreover, the phrase "or the private parts thereof" "makes it clear that it is unlawful for a person, *otherwise clothed*, to expose only [his or her] genitals." (*People v. Massicot, supra,* 97 Cal.App.4th at p. 927, italics added.) The trial court did not err in refusing to give the proposed modification. (*People v. Ochoa* (2001) 26 Cal.4th 398, 444 [110 Cal.Rptr.2d 324, 28 P.3d 78].)

## DISPOSITION

The judgment is affirmed.

Bedsworth, J., and Fybel, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 24, 2004.