Filed 7/22/20

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DWAYNE ALLEN HUBBARD,<br><br>        Defendant and Appellant. | C088149<br><br>(Super. Ct. No. 17FE018579) |

        APPEAL from a judgment of the Superior Court of Sacramento County, Michael A. Savage, Judge.  Affirmed.

        Jake C. Stebner, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance W. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Christina Hitomi Simpson, Deputy Attorney General, for Plaintiff and Respondent.

---

*  Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts III and IV.

1

Defendant Dwayne Allen Hubbard appeals from his conviction by jury trial for felony indecent exposure. Among his contentions are that the prosecutor committed misconduct by improperly referring to his decision to not testify, in violation of *Griffin v. California* (1965) 380 U.S. 609, at page 615, and that the trial court erred by failing to instruct the jury sua sponte on attempted indecent exposure as a lesser included offense. In the published portion of our opinion, we disagree with these claims.

In the unpublished portion of our opinion, we disagree with an additional claim of prosecutorial misconduct and agree with defendant's claim that the trial court erred by admitting certain photographs into evidence. We find the error harmless and affirm the judgment.

## FACTS AND PROCEEDINGS

The testimony presented at defendant's trial revealed the following:

At approximately 10:00 p.m., after finishing class at Cosumnes River College, Nayeli B. stood at the top of a set of stairs in front of the Winn Center while awaiting her ride home. She stood on the left side of the stairs. It was dark, but the area was well-lit by streetlamps. Nayeli saw defendant walking toward her; there was no one else in front of the building. Defendant walked closely past her.

After walking past Nayeli, defendant walked down the stairs and stood behind two signs with a several inch gap between them; the signs were to the left of the bottom of the stairs and approximately 36 feet from her. That area was illuminated by a thin-poled streetlamp located between defendant and Nayeli.

Nayeli felt uncomfortable, so she called her girlfriend. Defendant "kept looking back staring at [her]" and "gawking" at her for approximately one to two minutes. Nayeli increased her attention on him so she could describe him for her girlfriend. She "noticed he was masturbating" while gawking at her. She did not see defendant pull out his penis, but she could see his penis, and she saw him moving his hand up and down in a "masturbating motion." She watched him masturbate for approximately 30 to 40

2

seconds.[1]  Defendant did not turn his back to her, position himself behind one of the signs, try to cover himself up, or stop gawking at her.  Nayeli testified the light pole was "[a]bsolutely not" obstructing her view of defendant.

Nayeli ran back into the building; she was crying and screaming.  She told an employee that she had seen a man masturbating.  She said defendant was "thrusting himself" and that he "showed [her] his privates."  The employee called the police.  Campus security arrived at the scene and arrested defendant within three to five minutes.

The prosecution charged defendant with a single count of indecent exposure (Pen. Code, § 314, subd. 1)[2] and alleged that he had been previously convicted of committing a lewd or lascivious act on a child (§ 288, subd. (a)).  That previous conviction rendered the indecent exposure charge a felony.  (§ 314, subd. 2.)  The information further alleged defendant had three serious felony prior convictions within the meaning of section 667, subdivision (e)(2)(C)(iv) and section 1170.12, subdivision (c)(2)(C)(iv) -- lewd or lascivious act on a child under 14 years (§ 288, subd. (a)), assault with intent to commit a sexual offense (§ 220), and attempted kidnapping (§§ 664, 207, subd. (a)).

A jury found defendant guilty of indecent exposure.  In a bifurcated proceeding, the trial court found the allegations true.  The court denied defendant's motion to dismiss the prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  Applying the three strikes law, the court sentenced defendant to 25 years to life in prison.

Defendant timely appealed.  Additional facts will be set out in the Discussion as necessary.

---

[1]  Nayeli later testified she ran back into the Winn Center as soon as she noticed he was masturbating.

[2]  Further undesignated statutory references are to the Penal Code.

3

## DISCUSSION

## I

### *Allegation of* Griffin *Error*

Defendant neither testified nor called any witnesses on his behalf. He contends the prosecutor improperly commented on his failure to testify, in violation of *Griffin*. Although we view this as a fairly close case, as we explain in detail below, we conclude the prosecutor's challenged comments were fair responses to specific portions of defense counsel's closing argument.

A. *Procedural Background*

During her closing argument, defense counsel argued that defendant was merely a student who had to urinate: "So this student is leaving campus. He has to take a pee. He is walking down the stairs. He is going to the Light Rail station. He has no idea how many people might be standing there at that Light Rail station. There is one person where he is, okay? There is one person that he just walked past. She had just stopped in front of him at the top of those stairs. He passed her. He glances back once to check is she going to stay there. Is this a private place or not." Two short paragraphs of the transcript from the end of her closing, defense counsel emphasized the lack of physical evidence against defendant and told the jury that: "*In no way, shape or form did the government give a student any chance of proving he is not guilty*." (Italics added.) The trial court sustained the prosecutor's objection that the argument assumed facts not in evidence.

After a recess, at the beginning of his rebuttal argument, the prosecutor read CALCRIM No. 355: "A defendant has an absolute constitutional right not to testify. He may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider for any reason at all the fact the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

The prosecutor then argued: "That's the law and you guys have to follow it. You must understand that. Also, the burden in this case, it's with the People. It's with me. It never shifts. [Defense counsel] is absolutely correct when she tells you they don't have to do anything. They don't have to put on any evidence.

"But now let's talk about what they are not allowed to do. She's not allowed to get up here in closing and make up facts of which there is no evidence of that. What am I talking about? Well, apparently he's a college student who was getting out of class, going to the Light Rail station, stopped to pee. What evidence did we hear of that? What evidence at all?

"He had a collared shirt and a backpack on. That is true. You heard that evidence. You didn't hear any evidence of the narrative she spun about this innocent man walking after getting out of college class going to the Light Rail station, zero, none.

"The defendant has an absolute right not to testify, but she cannot use that as a sword and a shield. And that's what she did. And the reason she did it, because these facts don't break good for her or her client. You are left with the evidence you heard."

The prosecutor concluded his rebuttal: "Did [defendant] sit around innocently peeing or just hanging out facing the Winn Center? No, he didn't. He went to the Light Rail station. [¶] The facts are clear, the evidence is uncontroverted. The defendant has a constitutional right to the presumption of innocence. He has that throughout these proceedings, up and until you are convinced otherwise. The burden never shifts. Remember that. But what he is not entitled to do is a made up universe of facts that was just given to you in the defense attorney's closing argument."

At the conclusion of the prosecutor's argument, defense counsel requested to approach the bench. The lawyers and the court conferenced in chambers. After giving the jury its final instructions and dismissing it to begin deliberations, the court told defense counsel, "I know you have something you want to put on the record . . . so we will get to that in just a moment." After addressing other procedural issues, the court

stated, "And your argument on the closing, Ms. Cunningham." Defense counsel then objected to the prosecutor's argument; she argued he improperly drew attention to the fact that defendant did not testify before arguing there was no evidence to support defense counsel's version of the events. According to defense counsel, the prosecutor's argument implied defendant should have testified. She requested a curative instruction.

The trial court observed the prosecutor had a right to recite any jury instruction, and it was not improper to highlight the fact that there was no evidence that defendant was merely urinating. It did not give a curative instruction.

B. *Standard of Review*

We evaluate claims of *Griffin* error by inquiring whether there is "a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify." (*People v. Clair* (1992) 2 Cal.4th 629, 663.) "[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) We review prosecutorial remarks referring to the defendant's failure to testify de novo. (See *People v. Roybal* (1998) 19 Cal.4th 481, 514.)

"What is crucial to a claim of prosecutorial misconduct is not the good faith *vel non* of the prosecutor, but the potential injury to the defendant." (*People v. Benson* (1990) 52 Cal.3d 754, 793.) "Under the federal standard, prosecutorial misconduct that infects the trial with such ' "unfairness as to make the resulting conviction a denial of due process" ' is reversible error. [Citation.] In contrast, under our state law, prosecutorial misconduct is reversible error where the prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct" ' [citation]." (*People v. Martinez* (2010) 47 Cal.4th 911, 955-956.)

6

C. *Forfeiture*

The Attorney General contends defendant forfeited the argument by not timely objecting to the argument and by not objecting on the basis of a federal constitutional error. We disagree.

"To preserve a misconduct claim for review on appeal, a defendant must make a timely objection and, unless an admonition would not have cured the harm, ask the trial court to admonish the jury to disregard the prosecutor's improper remarks or conduct. [Citation.]" (*People v. Martinez, supra*, 47 Cal.4th at p. 956.) In *People v. Peoples* (2016) 62 Cal.4th 718 at page 801, our Supreme Court concluded the defendant did not forfeit a prosecutor misconduct claim despite his failure to contemporaneously object to the statements. The court held that the defendant's motion for a mistrial the day after the prosecutor's remarks preserved the issue on appeal where the motion occurred before the jury had begun deliberating and well before a verdict had been reached. (*Ibid.*)

Here, while the referenced chambers conference was unreported, it appears defense counsel raised her objections to the prosecutor's argument immediately after the conclusion of the prosecutor's argument. We conclude defendant's objection put the court on notice that misconduct was alleged in time for the court to issue a curative instruction. Thus, defendant's objection was timely.

We also disagree that defendant forfeited the argument by not objecting on the basis of a federal constitutional error. Defendant contended that the prosecutor had made "an improper argument" by highlighting that he did not testify and implying that he should have testified to support his trial counsel's version of the events. That objection and explanation was sufficient to preserve the claim.

D. Griffin *Error Background*

Under the rule in *Griffin v. California, supra*, 380 U.S. at pages 612 to 613, it is a violation of the Fifth Amendment to the United States Constitution for the prosecutor or court to comment on the defendant's failure to testify. The *Griffin* rule has been extended

7

to prohibit a prosecutor from commenting, either directly or indirectly, on the defendant's failure to testify. (*People v. Medina* (1995) 11 Cal.4th 694, 755; *People v. Guzman* (2000) 80 Cal.App.4th 1282, 1287 [*Griffin* has been interpreted as prohibiting prosecution from "so much as suggesting to the jury that it may view the defendant's silence as evidence of guilt"]; *People v. Vargas* (1973) 9 Cal.3d 470, 476 [prosecutor's argument asserting "there is no denial at all that they were all there" connotes a personal response from the accused himself].) This rule does not prohibit a prosecutor's comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses. (*People v. Hovey* (1988) 44 Cal.3d 543, 572; *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1524.) " ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819 .)

As relevant here, under certain *specific* circumstances a prosecutor's reference to a defendant's opportunity to testify may be properly classified as fair response to defense counsel's argument. This tactic is not without risk, but the United States Supreme Court has described a situation where a reference to a lack of evidence coming from defendant himself does not violate his Fifth Amendment privilege. In *United States v. Robinson* (1988) 485 U.S. 25, defense counsel urged during closing argument that the government had not allowed defendant to explain his side of the story in a mail fraud prosecution. The prosecutor responded during his closing that defendant " 'could have taken the stand and explained it to you . . . .' " (*Id.* at p. 28.) The Court observed that the prosecutor's comment referred to defendant's decision to not testify as declining an opportunity to tell his side of the story. (*Id.* at pp. 31-32.) The Court did not find error, explaining the difference between *Griffin* error and the prosecutor's comments in *Robinson*: "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination

8

is violated.  But whereas in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege."  (*Id.* at p. 32.)  The Court observed, " '[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, [citation] . . . .'  [Citation.]  To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another."  (*Id.* at p. 33.)  "It is one thing to hold . . . that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence."  (*Id.* at p. 34.)

Thus "[q]uestions or *argument suggesting that the defendant did not have a fair opportunity to explain his innocence* can open the door to evidence and comment on his silence.  [Citation.]"  (*People v. Lewis* (2004) 117 Cal.App.4th 246, 257, italics added.)

E.  *Analysis*

As we have detailed above, here defense counsel argued that defendant was merely a student leaving campus who had to urinate, despite the fact that no evidence had been admitted supporting that description of events.  She added that the government did not give "a student any chance of proving he is not guilty."

The prosecutor then began his rebuttal by reciting CALCRIM No. 355.  Absent the preceding argument by defense counsel, this may well have been problematic.  (See *In re Rodriguez* (1981) 119 Cal.App.3d 457, 468 [discouraging reference to comparable instruction by the prosecutor in argument, noting that the "probable effect is to focus the jury's attention upon" defendant's failure to testify and comments thereon, and that "depending upon the tone and manner in which they are delivered, . . . convey a meaning precisely contrary to their literal import"].)

9

The prosecutor then reminded the jury that the defense did not have to put on any evidence, and stated: "But now let's talk about what they are not allowed to do. She's not allowed to get up here in closing and make up facts of which there is no evidence of that. What am I talking about? Well, apparently he's a college student who was getting out of class, going to the Light Rail station, stopped to pee. What evidence did we hear of that? What evidence at all?" He continued: "You didn't hear any evidence of the narrative she spun about this innocent man walking after getting out of college class going to the Light Rail station, zero, none." These statements were permissible comments on the evidence and did not comment on defendant's decision to not testify. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1339-1340 [prosecutor's statement that " 'there is no evidence to the contrary' " does not constitute *Griffin* error because it did not allude to the lack of refutation or denial by defendant].)

The prosecutor continued: "The defendant has an absolute right not to testify, but she cannot use that as a sword and a shield. And that's what she did. And the reason she did it, because these facts don't break good for her or her client. You are left with the evidence you heard." These statements, while again referencing CALCRIM No. 355 and arguably impermissible comments on defendant's decision to not testify when taken out of context, in this instance were fair response to defense counsel's closing argument.[3] The prosecutor fairly observed that defense counsel had just argued a version of the facts largely lacking in evidentiary support--the sword--while not subjecting defendant or that version of the facts generally to cross examination--the shield. And, importantly, as we have described above, defense counsel had just told the jury that "the government" had not, in any "way, shape, or form," given defendant the "chance of proving he is not

---

[3] It is important here to note that defense counsel apparently identified as female and defendant as male. Therefore the majority of the prosecutor's references in this segment (to "her" and "she") were to defense counsel, not defendant himself.

10

guilty." Under *Robinson* and *Lewis*, this argument permitted the prosecutor to counter the suggestion that defendant was somehow precluded by the government from telling his story. While we recognize that, for practical purposes, defendant was not able to testify given his prior sex offenses (see Evid. Code, § 788; *People v. Linyard* (1957) 151 Cal.App.2d 50, 55), here defense counsel herself raised the issue.

In concluding his rebuttal argument, the prosecutor stated: "Did [defendant] sit around innocently peeing or just hanging out facing the Winn Center? No, he didn't. He went to the Light Rail station. [¶] The facts are clear, the evidence is uncontroverted. The defendant has a constitutional right to the presumption of innocence. He has that throughout these proceedings, up and until you are convinced otherwise. The burden never shifts. Remember that. But what he is not entitled to do is a made up universe of facts that was just given to you in the defense attorney's closing argument."

Our Supreme Court has held that a prosecutor may commit *Griffin* error if he argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided only by the defendant, who therefore would be required to take the witness stand. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1229.) The prosecutor may, however, describe the evidence as "unrefuted" or "uncontradicted" where the evidence could have been contradicted by witnesses other than defendant. (*Ibid.*) In *People v. Bruce G.* (2002) 97 Cal.App.4th 1233 at pages 1244 to 1245, we observed that a prosecutor may characterize evidence as "uncontroverted" even where the defendant is the only person who could have known what did or did not happen if the prosecutor was commenting on the entire state of the evidence.

Here, defendant could have presented other witnesses to support his counsel's version of events. For example, defendant could have called his professor, a classmate, or an administrator to testify that he was in a class that had concluded immediately before the incident or some other fact to show that he was, indeed, "a student," as counsel argued. Moreover, here the prosecutor's statement that the evidence was

11

"uncontradicted" was a comment on the state of the evidence rather than a comment on defendant's failure to testify. The comment simply observed, correctly, that no evidence contradicting Nayeli's version of events had been presented. Because the prosecutor's statements were fair comments in response to a defense argument that was not based on actual evidence admitted at trial, this segment of the argument was also permissible.

For these reasons, we conclude the prosecutor did not commit *Griffin* error in any of his challenged comments during his rebuttal argument.

## II

### *Lesser Included Offense Instruction*

Defendant contends the trial court erred by failing to instruct the jury sua sponte on the law of attempted indecent exposure as a lesser included crime of indecent exposure. He asserts there is substantial evidence that he committed attempted indecent exposure but not the completed crime of indecent exposure, requiring the court to instruct the jury on attempt. We disagree.

A. *Duty to Instruct*

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.] 'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.' [Citations.] 'To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.' [Citations.] [¶] ' "Conversely, even on request, the court 'has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction.' " [Citation.] This substantial evidence requirement is not satisfied by " '*any* evidence . . . no matter how weak,' " but rather by evidence from which a jury composed of reasonable

12

persons could conclude "that the lesser offense, but not the greater, was committed." [Citation.] "On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense." ' " (*People v. Souza* (2012) 54 Cal.4th 90, 115-116.) An attempt to commit a specific intent crime is considered a lesser included offense of the completed crime. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609.)

"Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." (*People v. Wilson* (1967) 66 Cal.2d 749, 763.)

B. *Indecent Exposure*

"Generally, a conviction for indecent exposure requires proof of two elements: '(1) the defendant must willfully and lewdly expose the private parts of his person; and (2) such exposure must be committed in a public place or in a place where there are present other persons to be offended or annoyed thereby.' [Citation.]" (*People v. Carbajal* (2003) 114 Cal.App.4th 978, 982 (*Carbajal*).) "[A] conviction for indecent exposure under Penal Code section 314, subdivision 1 requires evidence that a defendant actually exposed his or her genitals in the presence of another person, but there is no concomitant requirement that such person actually must have seen the defendant's genitals." (*Id.* at p. 986.)

The trial court instructed the jury with CALCRIM No. 1160, which provides: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully exposed his genitals in the presence of another person or persons who might be offended or annoyed by the defendant's actions; [¶] [AND] [¶] 2. When the defendant exposed himself, he acted lewdly by intending to direct public attention to his genitals for the purpose of sexually arousing or gratifying himself or another person, or sexually offending another person[.] [¶] Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage. [¶] It is not required that another person actually see the exposed genitals."

13

As for attempted indecent exposure, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) "[A] defendant can be convicted of an attempt to commit a crime even though the crime, in fact, was completed." (*People v. Rundle* (2008) 43 Cal.4th 76, 138, fn. 28, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; § 663.)

In *Carbajal*, *supra*, 114 Cal.App.4th 978, the appellate court directly addressed the issue whether a defendant may be convicted of indecent exposure where the complaining witness did not personally see the defendant's genitals. While sitting at a table in a restaurant, Carbajal put his fist inside his shorts and moved his hands up and down for five to 10 minutes. He then ejaculated onto the floor. The complaining witness testified she did not see Carbajal's penis because he wore a long t-shirt and loose fitting shorts. The witness could tell he had taken his penis out of his shorts because she would see the skin of his fist " '[w]hen he made strong movements . . . .' " (*Id*. at p. 981.) The jury found the defendant guilty of indecent exposure and lewd conduct. (*Ibid*.)

On appeal, Carbajal challenged the sufficiency of the evidence as to his conviction for indecent exposure because the complaining witnesses did not actually see his genitals. (*Carbajal*, *supra*, 114 Cal.App.4th at p. 982.) The court reviewed the history of section 314 and the application of similar statutes in other jurisdictions. (*Carbajal*, at pp. 983-986.) The court first observed that, at common law, indecent exposure only required that the exposure had occurred in a public place, not that it be observed. (*Id.* at p. 983, citing 3 Wharton's Criminal Law (15th ed. 1995) § 308, pp. 196-200, fns. omitted.) In reviewing recent cases from other jurisdictions, the court noted several jurisdictions have not required the exposure to be witnessed. (*Carbajal*, at pp. 984-985 [citing cases].) The court identified potentially conflicting case law from Texas, where a divided appellate court held that a man using his hand to shield his otherwise uncovered penis had not committed indecent exposure (*Beasley v. State* (Tex. App. 1995) 906 S.W.2d 270, 271,

14

272), and a different appellate court later concluded that circumstantial evidence suggesting a defendant was naked from the waist down and was masturbating was sufficient to support a conviction for indecent exposure (*Metts v. State* (Tex. App. 2000) 22 S.W.3d 544, 546-548). (*Carbajal*, at p. 985.) Finally, the *Carbajal* court described two cases from other jurisdictions in which the evidence was insufficient to support the conclusion that the defendant had actually exposed himself. (*Carbajal*, at p. 986, citing *Commonwealth v. Arthur* (Mass. 1995) 650 N.E.2d 787, 788-789 [evidence insufficient where defendant only exposed pubic hair], *State v. Jaime* (Conn. Cir. Ct. 1967) 236 A.2d 474, 475 [evidence insufficient where defendant was observed "shaking his hand in the region of his sexual organ" but not exposing himself].)

The *Carbajal* court concluded: "Our review of the common law and cases from other jurisdictions leads us to conclude that a conviction for indecent exposure under Penal Code section 314, subdivision 1 requires evidence that a defendant actually exposed his or her genitals in the presence of another person, but there is no concomitant requirement that such person actually must have seen the defendant's genitals. Thus, we will uphold defendant's conviction for indecent exposure in the absence of evidence of any direct visual observation of his genitals so long as there is sufficient circumstantial evidence to show that actual exposure occurred." (*Carbajal*, *supra*, 114 Cal.App.4th at p. 986.)

Defendant relies on *People v. Rehmeyer* (1993) 19 Cal.App.4th 1758, where a complaining witness awoke to the sound of Rehmeyer putting lotion on his skin and rubbing briskly. The witness saw a nude--except for a baseball cap--man in her doorway, who turned and ran away when she awoke. She did not see the man's genitals. (*Id*. at p. 1764.) A jury found Rehmeyer guilty of attempted indecent exposure, and he challenged the conviction on appeal. (*Id*. at p. 1766.) The appellate court concluded sufficient evidence supported Rehmeyer's intent to expose himself and that he was masturbating before the witness woke up. (*Id*. at p. 1767.) But the court in *Rehmeyer* notably did *not*

15

conclude that the evidence presented would have been insufficient to support a conviction for indecent exposure merely because the witness did not see Rehmeyer's genitals. Indeed, the court did not discuss whether a complaining witness would need to see a defendant's genitals to support a conviction for indecent exposure.

We apply the standard described in *Carbajal*, *supra*, 114 Cal.App.4th at page 986, and conclude here that there was not substantial evidence to require the attempted indecent exposure instruction. Defendant asserts that a juror skeptical of Nayeli's version of events could have reasonably concluded that the prosecution had only proved attempted indecent exposure. He contends Nayeli was standing approximately 36 feet away from defendant, there was no evidence of semen at the scene, the events occurred at night, and defendant was standing between two signs. He argues Nayeli was on "high alert" and could have misperceived or confabulated what actually occurred. Finally, he asserts circumstantial evidence allows for the conclusion that the light pole could have partially or completely blocked her view of defendant's genitals. Defendant concludes: "[A] reasonable juror had reason to conclude that [defendant] was masturbating and *attempting* to expose his penis to [Nayeli], but that his effort was thwarted by the visual barriers of darkness, distance, and physical obstructions between him and [Nayeli]."

However, the issue here is not whether Nayeli actually observed defendant's genitals. Rather, the issue is whether, in Nayeli's presence, defendant willfully exposed himself lewdly for the purpose of sexually gratifying himself or offending Nayeli. Defendant argues that a reasonable juror could have concluded that defendant's conduct satisfied all of the elements but that his genitals were not visible to Nayeli. But in that circumstance, defendant would still have satisfied the elements of indecent exposure. Therefore, we conclude there was no factual circumstance in which the jury could have

16

found defendant guilty of attempted indecent exposure and not guilty of indecent exposure.[4]

III

*Defendant's Booking Photograph and Photograph of Nayeli*

Defendant next contends the trial court erred by admitting into evidence his booking photograph and a photograph of Nayeli. Defendant argues the photographs were inadmissible because they were irrelevant and because the risk of undue prejudice substantially outweighed any probative value of the photographs. We agree there was error but find it harmless.

A. *Procedural Background*

The prosecutor sought to introduce defendant's booking photograph and a photograph of Nayeli taken before the incident. In defendant's photograph, his eyes appear red, watery, and almost closed. The top of the photo states defendant's "Arrest Number." The photograph extends to defendant's top shoulder and neck area; he appears to be wearing a dark-colored outer layer, although it is not clear what that garment is, and possibly a collared shirt. To the extent the photograph would otherwise show defendant's clothes, almost all of that area is covered by defendant's long, dreadlocked hair. Defendant had not changed his appearance since the photograph was taken.

Nayeli presents in her photograph as a smiling and pleasant young lady, possibly at some kind of event. She testified the photograph was taken around the time of the incident, which was less than nine months before trial. No evidence suggested her appearance had changed between the date of the incident and the date of her testimony.

---

[4] Defendant also argues this issue has been preserved despite defendant's failure to raise it at trial, the error was not invited, and the error was not harmless. Because we conclude the trial court did not err by not instructing the jury on the law of attempted indecent exposure, we do not reach these other issues.

17

Defendant moved to exclude the photographs from evidence. Regarding the photograph of Nayeli, defense counsel argued the photograph was irrelevant and "only serve[d] to invoke sympathy and bias on the part of the jury." The prosecutor argued: "I will be honest with you, your Honor, I use them in Power Point closings, pictures of the victim and defendant. That's why I want it." The trial court permitted use of the photograph provided it "accurately depicts who the woman is . . . just to remind the jury of who she is."

The trial court found defendant's booking photograph was not "particularly prejudicial" and that defendant looked "sleepy, if anything." The court initially deferred ruling and after defense counsel's cross examination of Nayeli--which focused on her ability to observe defendant's conduct given the lighting and physical impediments--the court concluded the booking photograph was relevant to prove identity, pointing out that defense counsel had questioned Nayeli about her ability to accurately perceive defendant during the incident. The court also determined the booking photograph was relevant to show what defendant looked like on the night of the incident to justify Nayeli's reaction to him coming up from behind her.

At the court's direction, the prosecutor displayed the booking photograph and the photograph of Nayeli on different slides during closing argument, although he had originally expressed the intention to show them side by side on one slide. He told the jury that he did not display the photograph so the jury would "condemn" defendant or "judge" him based on the photograph. Rather, the prosecutor stated that he displayed the photograph "because he's wearing the clothes that he was wearing that night."

B. *Legal Background*

Only relevant evidence is admissible. (Evid. Code, § 350.) All relevant evidence is admissible unless excluded under the federal or California Constitution or by statute. (*Id.*, § 351.) Evidence is relevant where it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

18

(*Id.*, § 210.) "The trial court is vested with wide discretion in determining the relevance of evidence. [Citation.] The court, however, has no discretion to admit irrelevant evidence. [Citation.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) We review the trial court's decision whether to admit evidence for abuse of discretion. (*People v. Benavides* (2005) 35 Cal.4th 69, 90.)

" 'In reviewing the ruling of the trial court, we reiterate the well-established principle that "the admissibility of evidence has two components: (1) whether the challenged evidence satisfied the 'relevancy' requirement set forth in Evidence Code section 210, and (2) if the evidence was relevant, whether the trial court abused its discretion under Evidence Code section 352 in finding that the probative value of the [evidence] was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice." ' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1166.) Our Supreme Court has " ' "described the 'prejudice' referred to in Evidence Code section 352 as characterizing evidence that uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues. [Citation.]" ' " (*Id.* at p. 1168.)

In making this determination, a court can consider whether the erroneously admitted evidence seems "likely to have appreciably intensified whatever feelings – whether of hostility toward defendant or sympathy toward his victim – that the jury may have developed in this case." (*People v. Poggi* (1988) 45 Cal.3d 306, 323.)

C. *Booking Photo*

Defendant's booking photograph was not relevant. Identity was not disputed. Defense counsel sought to establish that Nayeli could not see what defendant was doing behind the signs, but she did not argue he was not there. Even if identity were disputed, the booking photograph was only minimally relevant to proving identity. Nayeli identified defendant in person the night of the incident, and she identified him in court. The officer who responded to the scene identified defendant in court and identified

19

defendant as the person in the booking photograph, but did not testify that defendant's physical appearance had changed.

Moreover, the parties agreed that the photograph *does not* depict defendant as he looked that evening. The photograph only shows the collar portion of what defendant wore on the night in question, which was not in dispute. The parties agree the photograph depicted defendant "mid-blink," which we presume was not how defendant looked while interacting with Nayeli. To the extent that the photograph was relevant to show his haircut, facial hair, or other identifying features, defendant had not changed any of those things between the date of his arrest and the trial date.

Any marginal relevance was substantially outweighed by its prejudicial effect. Defendant's nearly-closed, red, watery eyes give the appearance of intoxication. As argued by defense counsel at trial, the photograph is very unflattering. In our view, the booking photograph only served to provide the jury with a lasting, negative image of defendant. It was an abuse of discretion to admit the irrelevant, prejudicial photograph.

D. *Photo of Nayeli*

The photograph of Nayeli was completely irrelevant. We are not persuaded by the prosecutor's argument that he "use[s] them in Power Point closings" and the trial court's conclusion that the photograph was admissible to "remind the jury of who she is." Nayeli was one of only three witnesses to testify during the only day of testimony and had testified the day before. On appeal, the Attorney General argues the photograph of Nayeli "was relevant to whether [defendant] [w]as guilty of the charged crime. Accordingly, the photo was relevant." How exactly the photograph is relevant, the Attorney General does not say. Frankly, the argument makes no sense. It was an abuse of discretion to admit the photograph.

E. *Harmless Error*

If we determine a trial court abused its discretion in admitting evidence that had a probative value that was outweighed by its potentially prejudicial effect, reversal is

20

required when the error is not deemed harmless under the *Watson*[5] standard. (*People v. Carter*, *supra*, 36 Cal.4th at pp. 1170-1171.) " 'Under the *Watson* standard, the erroneous admission of a photograph warrants reversal of a conviction only if the appellate court concludes that it is reasonably probable the jury would have reached a different result had the photograph been excluded.' " (*Ibid.*)

We conclude it was not reasonably probable that the jury would have returned a different verdict had the photographs been excluded. Nayeli testified the previous day, and the impression of her testimony was likely fresh in the jury's mind. The photograph of Nayeli did not affect her version of events as explained through her testimony. While the photograph tends to show Nayeli in a favorable light, which could make her appear more sympathetic to the jury, we conclude it was not reasonably probable any such sympathy would have changed the verdict.

Similarly, the jury had the opportunity to observe defendant throughout the trial. Testimony at trial informed the jury that defendant was arrested on the night in question, and nothing in the photograph suggested defendant had previously been arrested, so the photograph provided no new information. Both counsel told the jury that defendant was not intoxicated at the time of the incident. It was not reasonably probable that defendant would have received a different result at trial had the photograph been properly excluded. Therefore, the error in admitting the photographs was harmless.

IV

*Prosecutor's Comment Regarding Nayeli's Credibility and the Police Report*

Defendant next contends the prosecutor committed misconduct by impermissibly referring to the police report and by vouching for Nayeli's credibility. We disagree.

---

[5] *People v. Watson* (1956) 46 Cal.2d 818.

A. *Procedural Background*

During closing argument, the prosecutor stated: "Now just briefly, some general rules, and this was, again, touched on by the Judge in his instructions. We talked about some of this in voir dire, your duties as a juror. You can consider only what's inside that circle. [¶] We get this question a lot, oh, can we see the police report? You can't. It is a rule, you cannot look at the police report, otherwise my job would be pretty easy. I can[6] just mark them and hand them over to you guys. Don't ask for them. You are not going to get a copy of the police report."

During defendant's closing argument, defense counsel attacked Nayeli's credibility: "[Nayeli] should be hypervigilant, and she was. She was well aware of her surroundings, okay? [¶] That does not mean that she's right about what she saw. And in fact, her reaction to what she saw proves that she assumed the worst, and it makes perfect sense that she saw what she thought she was going to see. So remember, that with this young lady, and we are talking about bias, we are talking about witness bias, and I'm not saying she is a bad person. It just means she is not reliable."

In rebuttal, the prosecutor stated: "You heard from [Nayeli]. [Defense counsel] can sit up here and come up with an alternative reality of the facts, but you guys can't. You are stuck with the facts you heard. Now, either you believe [Nayeli] or you believe she is lying about this, and she has absolutely no reason to lie."

B. *Forfeiture and Ineffective Assistance of Counsel*

Defendant failed to object to these statements and request an admonition, but he argues he did not forfeit the arguments on appeal because no admonishment could have cured the harm caused by the prosecutor's comments. He does not explain how an admonishment to the jury could not have cured any harm done by the prosecutor's

---

**6** We presume the prosecutor intended to say "cannot."

allegedly improper comments regarding any police reports or his alleged bolstering of Nayeli's credibility. As we will discuss *post*, we conclude the prosecutor did not commit prejudicial misconduct, and therefore "it follows there was no pervasive misconduct that otherwise excused defendant's failure to object to the individual instances of misconduct of which he now complains." (*People v. Riggs* (2008) 44 Cal.4th 248, 298.)

Anticipating this conclusion, defendant contends his trial counsel's failure to object to the prosecutor's argument constituted ineffective assistance of counsel. " 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) " 'To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980.) "An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel. [Citation.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

C. *Comment Regarding the Police Report*

Defendant contends the prosecutor's comment about not being able to share the police report improperly implied that the police report contained inculpatory evidence that supported a finding of defendant's guilt. He contends the impropriety was compounded by the prosecutor's implication that but for a legal rule the jurors would have access to the police report.

It is improper for a prosecutor to suggest that additional inculpatory evidence was not presented at trial because of legal rules. (*Berger v. United States* (1935) 295 U.S. 78, 86-88.) In *Berger*, the prosecutor stated that procedural rules prevented the prosecutor

23

from eliciting testimony that a witness knew the defendant. (*Ibid*.) "The jury was thus invited to conclude that the witness . . . knew [defendant] well but pretended otherwise; and that this was within the personal knowledge of the prosecuting attorney." (*Id*. at p. 88; see also *State v. Leon* (Ariz. 1997) 945 P.2d 1290, 1292-1293 [improper for prosecutor to imply police report contained information "the Judge makes various rulings on" and suggesting the police report included evidence of other bad acts].)

Here, we do not interpret the prosecutor's comment about the police report to imply the existence of additional inculpatory evidence being withheld from the jury due to procedural rules. Rather, the prosecutor's comments appear intended to convey that he would have to do less work in prosecuting a case if he could just mark the police report and give it to the jury. While the implication was irrelevant, it was not harmful; we do not view that comment as suggesting the police report contained additional inculpatory evidence not presented at trial. We conclude defense counsel did not fall below a reasonable attorney standard by failing to object to the prosecutor's statement.

D. *Comment on Nayeli's Credibility*

" 'Impermissible "vouching" may occur where the prosecutor places the prestige of the government behind a witness through personal assurances of the witness's veracity or suggests that information not presented to the jury supports the witness's testimony.' [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 257.) But " '[p]rosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper "vouching," which usually involves an attempt to bolster a witness by reference to facts *outside* the record.' [Citation.] No impermissible 'vouching' occurs where 'the prosecutor properly relie[s] on facts of record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief.' [Citations.]" (*Ibid.*; see also *People v. Boyette* (2002) 29 Cal.4th 381, 433 [prosecutor may properly argue witness is telling the truth based on the circumstances of the case].)

24

In *U.S. v. Weatherspoon* (9th Cir. 2005) 410 F.3d 1142, 1145-1148, the court analyzed a prosecutor's argument regarding two witnesses. In the first, the prosecutor stated: "[Taylor's] statement about being threatened I don't believe is truthful, ladies and gentlemen." (*Id.* at p. 1147.) In the second, the prosecutor stated: "The point, ladies and gentlemen, is he told the truth in that handwritten statement that he gave on that morning, he told the truth when he came into the Grand Jury under oath, and he was in front of you today and told the truth to you." (*Ibid.*) The court concluded: "For any prosecutor to state his own view that witnesses are credible or not credible, or indeed to say flat out-three times over in rapid succession-that a witness 'told the truth,' rather than to invite the jury to make all of those determinations based on evidence to which the prosecutor points, cannot fairly be labeled as 'no more than a comment on the evidence that one would expect in a hard-fought case such as this,' or as 'nothing more than an unremarkable comment based upon the evidence,' or as 'merely a comment on the evidence.' " (*Id.* at p. 1148.)

We conclude the prosecutor's comments here are distinguishable from those in *Weatherspoon*. Here, the prosecutor's comments were comments on the evidence. The prosecutor rebutted the defense's argument that Nayeli was a hypervigilant woman who imagined defendant's criminal conduct because she was in a panic and was carefully observing him. The prosecutor reminded the jury that it heard Nayeli's testimony, and he argued (somewhat confusingly but not harmfully) that the defense attorney was asserting "an alternative reality of facts." The prosecutor's remark about Nayeli's lack of motivation to lie was a reasonable commentary on the circumstances of the case and would not have been understood by the jury as the prosecutor's personal beliefs or his knowledge about evidence outside of the record. Because the prosecutor's comments

25

were not objectionable, defense counsel did not fall below a reasonable attorney standard by failing to object to the prosecutor's comment.[7]

**DISPOSITION**

The judgment is affirmed.

                                                    /s/
                                          Duarte, Acting P.J.

We concur:


        /s/
Hoch, J.


        /s/
Butz, J.[*]

---

[7] Defendant contends the cumulative effect of the prosecutor's various improper comments requires reversal. Because we conclude the only error here--the admission of the photographs--was harmless, we do not analyze cumulative effect.

[*] Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.